THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANDREW A. STRAUCH *et al.* Plaintiffs in Error.

*Opinion filed April 23, 1909.*

1. APPEALS AND ERRORS—*instructions not objected to in Appellate Court cannot be attacked in Supreme Court.* Under the rule that a party removing a cause from the trial court to the Appellate Court must point out in his brief all errors relied upon for reversal, instructions to which no objections are made in the brief filed in the Appellate Court cannot be attacked in the Supreme Court.

2. CONSPIRACY—*when party introducing principal actors in conspiracy is guilty.* One who, with the intention of bringing together other persons for the purpose of forming a conspiracy, introduces such persons, who thereupon enter into the unlawful agreement contemplated, is guilty of conspiracy.

3. SAME—*party aiding and encouraging forming of conspiracy is guilty.* One who aids, assists and encourages two other persons to enter into an unlawful agreement to prevent competition in the letting of a public contract is equally guilty with the two who actively participated in the unlawful agreement and executed it.

4. SAME—*what constitutes a conspiracy to prevent competition in letting a public contract.* Where a person who has knowledge that a certain public contract will not be let if there is but one bidder goes to the sole intending bidder and arranges to put in a fictitious higher bid, thus enabling the real bidder to get the contract instead of having the letting thereof go over to a future time, there is conspiracy to prevent competition in letting the contract.

5. SAME—*matter of loss to public is not material in conspiracy to prevent competitive bidding.* It is the making of the unlawful agreement to prevent competition in the letting of a public contract which constitutes the offense of conspiracy, irrespective of the matter of loss to the public, and the fact that one of the parties to such an agreement objected to the amount of the bid and succeeded in having it reduced is not a circumstance to be considered in mitigation of his offense.

6. SAME—*concurrence in a conspiracy is sufficient without an agreement to concur.* All who, with knowledge of the facts, take part in a conspiracy after it is formed and while it is in execution, and concur in the plans and aid in executing them, are fellow-conspirators, and such concurrence, without proof of an agreement to concur, is conclusive against them, as they commit the offense of conspiracy when they become partners to the transaction to further the original plans.

7. NEW TRIAL,—*proof of bias of juror must be clear.* To justify setting aside a verdict and awarding a new trial because of previously expressed opinions of a juror indicating bias or prejudice, the proof of such bias or prejudice must be clear and satisfactory.

8. TRIAL,—*counsel may comment on what is fairly inferable from facts proven.* What is proven by direct testimony or is fairly inferable from facts and circumstances proven and which has a bearing upon the issues may be a fair subject for comment by counsel in the argument to the jury, and if such deductions or inferences tend to fix upon a defendant the wickedness of the crime charged against him, it is within the scope of proper argument to denounce him accordingly.

9. INSTRUCTIONS—*when an instruction to the effect that party signing receipt is presumed to know its contents is not misleading.* An instruction holding that if the jury believe, from the evidence, that one of the defendants in a conspiracy case signed a certain receipt then it is presumed he knew the contents thereof when he signed, is not misleading in failing to state whether such presumption is conclusive or rebuttable, where other instructions state that if such defendant did not know the contents and purport of the receipt when he signed it, it could not be considered against him.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Carroll county; the Hon. OSCAR E. HEARD, Judge, presiding.

O. M. GROVE, and W. H. A. RENNER, (E. E. WINGERT, of counsel,) for plaintiffs in error:

It is a familiar doctrine in criminal cases that if a reasonable doubt of the guilt of the prisoner is entertained the jury have no discretion but must acquit. *Miller* v. *People,* 39 Ill. 457; *Carle* v. *People,* 200 id. 500; *Johnson* v. *People,* 202 id. 60.

Acts done innocently, though tending to further the object of a conspiracy, will not render their author a co-conspirator. (6 Am. & Eng. Ency. Law, 840.) Knowledge of the conspiracy and intent to participate therein are essential.

Although an objection is sustained to unwarranted remarks of counsel in his closing argument to the jury and

they .are withdrawn, their effect has been produced upon the jury and remains with them. Counsel may not thus violate all proper rules to be observed in arguments to the jury and escape the consequences. *Wetzel* v. *Meranger*, 85 Ill. App. 457.

How much did it avail for the court to tell the jury that the remarks of counsel were improper? His words had found lodgment in the minds of the jury, spent their force and subserved the purpose for which they were uttered, and it were idle to talk about removing their effect upon the jury by a mere declaration from the court that they were improper. *Quinn* v. *People*, 123 Ill. 333.

In other jurisdictions, as well as our own, courts of review have criticised severely language of the public prosecutor in criminal trials similar to that used in this case and held the same to be ground for reversal. *Raggio* v. *People*, 135 Ill. 533; *Bonardo* v. *People*, 182 id. 420; *People* v. *Mitchell*, 62 Cal. 411; *State* v. *Fischer*, 134 Mo. 460; *Magnuson* v. *State*, 41 N. E. Rep. 545.

The object of a conspiracy must be proved as laid in the indictment, and in order to show conspiracy something more is required than proof of the mere passive cognizance of an illegal action intended or desired by others. There must be something showing active participation of some kind by the parties charged. *Evans* v. *People*, 90 Ill. 384; *People* v. *Mather*, 4 Wend. 229.

An instruction which singles out and gives undue prominence to certain facts, ignoring other facts proved and of equal importance in a proper determination of the case, is improper. *Calef* v. *Thomas*, 81 Ill. 178.

While a jury may convict upon the uncorroborated testimony of an accomplice, such testimony is to be subjected to the same tests applied to the testimony of other witnesses, and courts should proceed upon such testimony with great caution. *Campbell* v. *People*, 159 Ill. 9; *Hoyt* v. *People*, 140 id. 588; *Friedberg* v. *People*, 102 id. 160; *Earll* v.

*People,* 73 id. 329; *Cross* v. *People,* 47 id. 152; *Gray* v. *People,* 26 id. 344; *Collins* v. *People,* 98 id. 584.

W. H. STEAD, Attorney General, and F. J. STRANSKY, State's Attorney, for the People:

In all cases of conspiracy, and in all prosecutions for crimes perpetrated in pursuance of a conspiracy, it is proper to show the entire history and plan of the conspiracy in so far as may be necessary to connect the defendants with the crime charged and to explain their acts and motives, although the defendants may be thereby implicated in numerous overt acts constituting distinct indictable offenses and although the conspiracy may be disclosed in numerous indictable aspects. Roscoe on Crim. Evidence, secs. 92, 93; *Ford* v. *State,* 34 Ark. 649; *State* v. *Greenwade,* 72 Mo. 298; *Bloomer* v. *State,* 48 Md. 521; *Carroll* v. *Commonwealth,* 84 Pa. St. 107; *Tarbox* v. *State,* 38 Ohio St. 581.

A conspiracy is proven either expressly or by the proof of the facts from which the jury may infer it. It is seldom proved expressly, nor can a case easily be imagined in which that is likely to occur, unless where one of the persons implicated in the conspiracy consents to be examined as a witness for the prosecution. In nearly all cases the conspiracy is proved by circumstantial evidence, viz., by proof of facts from which the jury may fairly imply it. Archbold on Crim. Pl. & Pr. 619; *Ochs* v. *People,* 124 Ill. 421.

In order to constitute the crime of conspiracy it is not essential that each conspirator should know the exact part to be performed by the other conspirator in the execution of the conspiracy. 8 Cyc. 622, and cases cited.

A person may be liable for a conspiracy notwithstanding the part he takes is a subordinate one and was to be executed at a remote distance from the other co-conspirators. 8 Cyc. 643.

To render a person criminally liable as a conspirator it is not necessary that under the scheme he should have any

pecuniary benefit in the matter or have joined with a view of obtaining pecuniary benefit. 8 Cyc. 643.

It is immaterial whether persons indicted for conspiracy designed to procure the money for the purpose of sharing it or merely for the benefit of one of their number. *Stinson* v. *People,* 43 Ill. 401.

In the reception of circumstantial evidence in conspiracy cases great latitude must be allowed. The jury should have before them every fact which will enable them to come to a satisfactory conclusion. 8 Cyc. 678; *United States* v. *Wilson,* 60 Fed. Rep. 890.

It is not essential to the formation of a conspiracy that there should be a formal agreement between the parties to do the act charged. It is sufficient if the minds of the parties meet understandingly, so as to bring about an intelligent and deliberate agreement to do the acts and commit the crimes charged, although such agreement be not manifested by any formal words. *McKee* v. *State,* 111 Ind. 378.

When two or more conspire together to commit an actionable wrong, everything said, done or written by any one of them in execution or furtherance of their common purpose is deemed to be said, done and written by each one and is a relevant fact against each. *Hamilton* v. *Smith,* 39 Mich. 231; *Lasher* v. *Little,* 202 Ill. 551; Cooley on Torts, 127; *United States* v. *Cassaday,* 66 Fed. Rep. 693; *Spies* v. *People,* 122 Ill. 228; *Doremus* v. *Hennessy,* 176 id. 608; *Hawarden* v. *Coal Co.* 111 Wis. 545; *Accident Co.* v. *Horn,* 206 Ill. 493; *Franklin Union* v. *People,* 220 id. 376.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Andrew A. Strauch, Oswald Strauch and Hubert E. Hughes were jointly indicted in the circuit court of Carroll county for unlawfully conspiring for the purpose of preventing competition in a public letting of contracts for the construction of certain bridges which were to be constructed

partly at the expense of the county and partly at the expense of Fair Haven township. Hughes entered a plea of guilty and a fine of $500 was assessed against him, which was paid. The other two defendants entered their plea of not guilty, and they were at the November term, 1907, of the circuit court of said county tried, found guilty by the verdict of the jury and a fine of $500 was assessed against Andrew A. Strauch and a fine of $300 against Oswald Strauch. After overruling a motion for a new trial, judgment was entered upon the verdict. To reverse this judgment defendants removed the cause to the Appellate Court for the Second District by a writ of error, where the judgment below was in all particulars adjudged to be free from error and affirmed. A writ of error having issued for that purpose, this judgment is now brought into review in this court.

The facts, so far as the same are necessary to a decision of the questions involved, may be summarized as follows: Plaintiff in error Andrew A. Strauch and plaintiff in error Oswald Strauch, are, respectively, father and son. Andrew A. Strauch, at the time of the occurrence of the circumstances out of which this prosecution grows and for a number of years prior thereto, had been a member of the board of supervisors of Carroll county, elected in the town of Fair Haven. Oswald Strauch, the son, and two of his brothers, had been attending school at the State University at Urbana, from which Oswald had about the middle of June, 1906, graduated as a mechanical engineer. Four bridges were to be constructed at public expense in the town of Fair Haven, two of which were to be steel bridges and the other two were to be made of concrete. It appears that the three sons of Andrew A. Strauch, in order to profitably occupy their time during the summer vacation, had under consideration the matter of bidding for the contracts to construct the bridges referred to. It also appears that their father was very anxious that his sons have employment dur-

240—5

ing their vacation, and to this end he aided them in securing the data upon which a bid for the bridge work might be predicated. On June 13, 1906, plaintiff in error Andrew A. Strauch presented to the chairman of the board of supervisors of said county a petition, signed by the commissioners of highways of Fair Haven township, asking for county aid in the building of the two steel bridges above referred to. At the time the petition was presented Andrew A. Strauch requested the chairman of the county board to appoint three supervisors, whose names were suggested by Strauch, as a committee to represent the county in connection with the commissioners of highways of Fair Haven township, with which joint board rested the decision of the question whether county aid would be granted for the construction of said bridges in accordance with the prayer of the petition. Two of the supervisors suggested by Strauch were appointed on said committee, and the other member, appointed at the suggestion of the chairman of the board, was unobjectionable to Strauch. This committee of supervisors met with the commissioners of highways of Fair Haven township and decided to grant the prayer of the petition. The evidence shows that Andrew A. Strauch visited a number of bridge-building concerns for the purpose of procuring estimates upon the steel work, and that this information was sought with the view of enabling his sons to bid intelligently upon the contracts. On June 30, 1906, after legal notice, the commissioners of highways met with the committee of supervisors for the purpose of letting contracts for the construction of the bridges above referred to. The evidence shows that Andrew A. Strauch and his sons had numerous conferences regarding the matter of securing the work relating to the construction of these bridges. On the morning of the day the contracts were to be let Andrew A. Strauch ascertained that Hubert E. Hughes, the president of the Continental Bridge Company, was the only bidder present representing a bridge construction company. Andrew A.

Strauch informed Joseph Warner, one of the members of the joint committee, that there was only one bridge man present to bid on the bridges, and Mr. Warner informed him that the contract would not be let unless there was more than one bid. Andrew A. Strauch was frequently seen in consultation with Hughes before the hour arrived for letting the contracts, in one of which Hughes testified that Strauch told him that his boys were intending to bid on the contract for the two steel bridges and advised Hughes to "talk it over with the boys." Afterwards Andrew A. Strauch brought his son Oswald to Hughes and introduced them, saying at the time to Hughes, "Here is one of my boys,—here is one of my boys that has been figuring on the bridge work;" and said to his son Oswald, "Hughes is one of the men that came here on bridge matters." After this introduction the three men, Andrew A. Strauch, his son Oswald Strauch and Hughes, went to the private office of Andrew A. Strauch, in the village of Chadwick, and all three sat down at a table. Immediately upon going into the office Hughes and Oswald Strauch produced blue prints, specifications and figures relating to the contracts for the two steel bridges in question. Andrew A. Strauch then withdrew to another room adjoining the office, saying to Oswald Strauch and Hughes as he departed: "Whatever you do, do not get me mixed up in any of your deals; you and Hughes figure it over, but do not mix my name in any of your deals." The evidence is practically uncontradicted that Oswald Strauch and Hughes entered into an agreement at that time by the terms of which Oswald Strauch was to put in a sham bid over and above the amount of the bid to be submitted by Hughes, and that Hughes was to pay Oswald Strauch $50 in cash and refrain from bidding on the concrete bridges, and also the Strauch boys to do the hauling of the material for the steel bridges. The evidence shows that after this agreement was made Hughes revised his figures and increased the bid from $1985 to $2035, being $50 more

than he had originally intended to make, and that the bid put in by Oswald Strauch was $33 more than the revised figures of Hughes. The result was that the commissioners, having no knowledge of this unlawful agreement, awarded the contract for the construction of the steel bridges to the Continental Bridge Company upon the bid of Hughes, its president, and the concrete bridge contract was awarded to the Strauchs. Two days later Oswald Strauch appeared at the Chicago office of the Continental Bridge Company and there signed a receipt which reads as follows:

"$50.00                              CHICAGO, ILL., *July 2, 1906.*
    "Received of Continental Bridge Co. fifty and no/100 hundredths (50.00) on account of services at Chadwick, June 30th, '06.
                                             O. F. STRAUCH."

At the time this receipt was signed a check for $50, signed by H. E. Hughes and drawn on A. W. Jefferis & Co., bankers, payable to the order of O. F. Strauch, was delivered and on the same day endorsed by O. F. Strauch and paid. It also appears from the evidence that during the time Hughes and Oswald Strauch were negotiating in regard to the terms upon which Strauch would put in this sham bid, Oswald Strauch left the room and consulted frequently with his father in regard to the negotiations between himself and Hughes; that the amount of Hughes' bid was communicated to Andrew A. Strauch before the bid was put in, and he offered no opposition to the awarding of the contract to Hughes at the figures agreed upon by Hughes and Oswald Strauch. It was also agreed that the material for the steel bridges should be shipped to the order of Andrew A. Strauch, and in pursuance of this part of the agreement Hughes afterwards wrote a letter giving Andrew A. Strauch authority to receive the material from the railroad company, and Strauch acted as the agent of Hughes in procuring a drayman in the village of Chadwick to receive this material.

The foregoing statement contains a general outline of most important facts out of which this prosecution grows.

The indictment contains seven counts, all of which charge the defendants with the crime of conspiracy. The charging part of the fourth count avers that Hubert E. Hughes, Oswald Strauch and Andrew A. Strauch "did unlawfully conspire and agree together with a fraudulent and malicious intent then and there wrongfully, wickedly and unlawfully to prevent competition in the letting and awarding of a certain contract (a more particular description of said · contract being to the grand jurors unknown) to be thereafter, on the 30th day of June, in the year of our Lord one thousand nine hundred and six, (A. D. 1906,) let and awarded by the then and there authorities of the said county of Carroll and the then and there authorities of the said town of Fair Haven, in the said county of Carroll, aforesaid, said authorities of the said county of Carroll and said authorities of the said town of Fair Haven then and there being legally organized and then and there acting together as a joint organization in and at the letting and awarding of said contract, said authorities of the said county of Carroll and said authorities of the said town of Fair Haven, acting as such joint organization aforesaid, being then and there, at the time of and at said letting of said contract, the persons and authorities authorized by law to let and award said contract, the manner and means of said unlawful conspiracy and agreement so entered into as aforesaid, by the defendants aforesaid, to prevent competition aforesaid, in the letting aforesaid, of the contract aforesaid, being to these grand jurors unknown; contrary to the form of the statute in such case made and provided and against the peace and dignity of the same people of the State of Illinois." The first, second and third counts of the indictment are similar to the fourth count, except that the facts constituting the alleged unlawful agreement are set out more specifically. The fifth count charges a conspiracy to do an illegal act injurious to the public trade, and sets out with some particularity the nature of the illegal act and the man-

ner in which it is alleged such act was injurious to the public trade. The sixth and seventh counts charge a conspiracy to prevent competition in the letting of a public contract, and are similar to the fourth, which we have above set out.

Plaintiffs in error contend that this judgment should be reversed for the following reasons: (1) Because of the alleged error in giving instructions 4, 6, 7, 8, 9, 10, 11, 14, 15 and 16 on behalf of the People; (2) because the court erred, it is alleged, in refusing to give instructions 1, 2, 3 and 4 at the request of the plaintiffs in error; (3) because the court refused to grant a new trial on account of the prejudice of the juror John Iler, which alleged prejudice was brought to the attention of the court after the trial, by affidavits; (4) because of alleged improper and prejudicial remarks made by counsel in argument to the jury; (5) because it is claimed that the evidence is insufficient to support the verdict.

*First*—By the first assignment of error, in the order in which we have stated them above, plaintiffs in error complain of the giving of instructions 4, 6, 7, 8 and 9. These instructions are separated from 10, 11, 14, 15 and 16 for reasons which will soon appear. The ruling on the instructions first above mentioned is not properly preserved for review in this court. In accordance with leave granted, on the motion of the Attorney General a certified copy of the Appellate Court brief of plaintiffs in error has been filed in this court. From an examination of that brief it appears on pages 28 and 29 thereof that the only instructions complained of by plaintiffs in error in the Appellate Court were instructions 10, 11, 14, 15 and 16. No complaint was made by plaintiffs in error in the Appellate Court of the instructions 4, 6, 7, 8 and 9. Plaintiffs in error have waived their right to insist in this court that these instructions are erroneous, by their failure to point out the alleged errors and insist upon them in their brief in the Appellate Court. When a case is removed from the trial court to the Appel-

late Court it is the duty of the complaining party to point out to that court in his brief all the errors relied upon for a reversal, and where the appellant fails in this regard and the cause is by him brought to this court for review, no errors will be considered other than those which were presented by his brief to the Appellate Court. *Abend* v. *Endowment Fund Com.* 174 Ill. 96; *Reynolds* v. *Mandel,* 175 id. 615.

Instructions 10, 11, 14, 15 and 16 were by plaintiffs in error complained of in their brief in the Appellate Court and their complaint is renewed in this court. The assignments of error upon the giving of these instructions are properly before us for review. Instruction No. 10 is applicable especially to the case of Andrew A. Strauch. By it the jury are instructed that if Andrew A. Strauch introduced his son Oswald Strauch to Hubert E. Hughes with the intention of bringing said Hughes and said Oswald Strauch into an agreement or understanding which would, in effect, prevent competition in the letting of the contract mentioned in the indictment, and that the said Hughes and Oswald Strauch did thereafter enter into such unlawful agreement with each other to prevent competition in the letting of the contract in question, then the jury may be justified in finding the said Andrew A. Strauch guilty of conspiracy. The complaint made of this instruction is that it singles out the fact that Andrew A. Strauch introduced his son to Hughes and predicates the guilt of Andrew A. Strauch upon such isolated fact. The act of introducing the two principal actors in this unlawful confederation would, of course, amount to nothing if done with a proper motive; but if, as the instruction recites, the parties were introduced by Andrew A. Strauch "with the intention of bringing the said Hubert E. Hughes and the said Oswald Strauch into an agreement or understanding which, in effect, would prevent competition in the letting of the contract mentioned in the indictment," and such introduction resulted

in the formation of the unlawful agreement set out in the indictment, then we are unable to conceive of any reason why Andrew A. Strauch would not thereby become a party to such unlawful conspiracy. The gist of the offense is the combination or confederacy for the illegal purpose of preventing competition in the letting of the contract in question. If Andrew A. Strauch innocently introduced his son to Hughes, the mere fact that these parties, as a result of such acquaintance, might ultimately enter into a conspiracy would not make Andrew A. Strauch a party thereto, even though his act in introducing the parties might be the means of bringing about the ultimate conspiracy. The criminality of his act in such case would necessarily depend upon the guilty intention or purpose he had in view in thus bringing the parties into communication with each other. If this plaintiff in error did the act mentioned in the instruction with the unlawful purpose therein stated, the conclusion of the instruction that he would be guilty as a party to such conspiracy appears to be the necessary legal result from the premises stated in the instruction.

The criticism made on instruction No. 11 is not well taken. By that instruction the jury are told that it is sufficient to sustain a conviction if the People have shown by the evidence, beyond a reasonable doubt, that the defendants, or any two of them, did unlawfully conspire and agree together to prevent competition in the letting of said contract in the manner and form as charged in the indictment. It is objected by plaintiffs in error that the jury were liable to be misled by this instruction into the conclusion that if the evidence showed that some two of the parties charged were guilty of conspiracy the jury might convict any number of other persons charged. We do not see how it would be possible to put such construction upon the language here employed. The instruction does not purport to state facts which will warrant a verdict of guilty nor does it conclude by directing such a verdict. It certainly cannot be con-

tended that in order to constitute the offense of conspiracy it is necessary to prove that more than two of the persons charged entered into the unlawful confederation or agreement. If any two of the defendants charged entered into such conspiracy and the third aided, assisted and encouraged the making of such unlawful agreement, such third party would be equally guilty with those who actively participated in the unlawful agreement. Nor do we find any fault with the latter clause of instruction No. 11, which informs the jury that the offense of preventing competition in the letting of a contract may be by bids, the amounts of such having been previously agreed upon between parties to the conspiracy or by an agreement not to bid.

Instruction No. 14 is assailed by the plaintiffs in error. That instruction informs the jury that if they believe, from the evidence in this case, that Oswald Strauch signed the receipt introduced in evidence in this case, then it is presumed that he knew the contents thereof at the time of signing the same. The objection to this instruction is, that the jury are not informed by it whether the presumption is conclusive or rebuttable. By the twenty-sixth instruction given on behalf of plaintiff in error Oswald Strauch the jury were told that if they believed, from the evidence, that at the time of signing and delivering said receipt Oswald Strauch did not know the contents and purport of the same, then the jury should not consider such receipt as evidence against him. Taking the two instructions together, the jury should not have been misled as to the character of presumption which the law raises as to the knowledge Oswald Strauch had in regard to the contents of the receipt which he voluntarily signed.

On behalf of Andrew A. Strauch it was contended on the trial that he made objections to the amount which Hughes first proposed to bid for the steel bridges, and that through his objections Hughes reduced the amount of his bid somewhat and finally placed it at the lower figure. From

this circumstance it was contended that Andrew A. Strauch had been the means of reducing the cost of the bridges and thereby effected a saving to the municipalities. Instruction No. 15 was given on behalf of the People in view of this evidence. By it the jury were told that if the conspiracy had been entered into as charged in the indictment and sustained by the proof, the fact that Andrew A. Strauch was instrumental in lessening the cost of the said bridges to the authorities was immaterial. The principal complaint lodged against this instruction is, that it deprived Andrew A. Strauch of the benefit of this evidence in determining the degree of culpability, and, consequently, the amount of fine that should be imposed upon him. It is contended that it was a material circumstance to be considered by the jury in determining the amount of fine they would assess against Andrew A. Strauch in case they found him guilty. It must be borne in mind that the offense here may be complete even though the price at which the bridges were, in fact, constructed was not excessive. The plaintiffs in error are not charged with having fraudulently obtained an excessive price for the building of these bridges. The charge is that they entered into an unlawful conspiracy for the purpose of preventing competition in the letting of these contracts. If such unlawful combination was entered into, it is not a circumstance of mitigation that the contracts were, in fact, let at a reasonable price. The statute is leveled against the making of such unlawful combinations for the purpose of stifling competition among bidders for public work, and it is the making of such agreements that the statute makes criminal, and the offense does not depend on the amount of loss to the public in any given case. The evil tendency of such combinations is the essence of the offense. We do not think that the intervention of Andrew A. Strauch, which resulted in a slight reduction in the amount of Hughes' bid, could be said, as a matter of law, to be a mitigating circumstance proper to be considered in fixing the amount of his fine.

The instruction which told the jury that this circumstance was immaterial is not open to the exception taken to it.

Instruction No. 16 is subject to exception by plaintiffs in error. That instruction tells the jury, as a matter of law, that all who take part in a conspiracy after it is formed and while it is in execution, and all who, with knowledge of the facts, concur in the plans originally formed and aid in executing them, are fellow-conspirators; that their concurrence, without proof of an agreement to concur, is conclusive against them; that they commit the offense when they become partners to the transaction or further the original plan. It is not complained that this instruction is not good law, but it is said that it has never been approved by this court. Whether this statement is true or not, the principle of the instruction has often been approved. In *Spies* v. *People,* 122 Ill. 1, it was held that if one concur in a conspiracy no proof of agreement to concur is necessary. Such we understand to be the settled rule of law.

There was no error in giving any of the foregoing instructions on behalf of the People.

*Second*—Plaintiffs in error contend that the court erred in refusing instructions 1, 2, 3 and 4. These instructions may be considered together, since all contain the same proposition, in substance. By these instructions the jury were directed to acquit if they believed, from the evidence, that Andrew A. Strauch or Oswald Strauch were not actually intending to bid for the construction of these steel bridges on June 30, prior to their meeting with Hughes. The argument in support of this contention is, that if the Strauchs had no real intention of bidding upon the bridges prior to their meeting with Hughes, then, no matter what agreement they may have entered into with Hughes, said agreement could not amount to a conspiracy to prevent competition which, in fact, had no existence. This argument rests upon the assumption that the plaintiffs in error could only be guilty, under the indictment, upon proof, beyond a reason-

able doubt, that but for such confederation between Hughes and the Strauchs there would have been competition in the letting of said contracts and that such agreement had the effect of preventing such competition. The evidence shows that the contracts would not have been let on a single bid. If Oswald Strauch had not put in a sham bid, so as to lead the commissioners to believe that there was competition when, in fact, there was none, Hughes would not have obtained the contract for the want of competition, and the letting would, presumably, have been postponed until a time when there would have been competition. We cannot assent to plaintiffs in error's contention that the State was required to prove the existence of competition on the day that the contracts were let. Commissioner Warner had notified Andrew A. Strauch during the forenoon that the contracts would not be let upon a single bid. If, in view of this resolution of the officials, the plaintiffs in error entered into a conspiracy by the terms of which Oswald Strauch was to put in a fictitious bid for the purpose of enabling Hughes to obtain the contract and to prevent an adjournment of the letting to obtain other bidders, then the jury were justified in finding that the plaintiffs in error were guilty. The court properly refused the instructions now under consideration, which erroneously embodied the converse of the above proposition.

*Third*—Plaintiffs in error next insist that a new trial should have been granted on account of the prejudice of juror John Iler. In support of this contention plaintiffs in error introduced W. J. Lamoreux and Frank Roberts, both of whom testified to statements made by Iler previous to his being called as a juror, which statements indicated that Iler had a bitter personal feeling against Andrew A. Strauch. The juror denied that he made the statements attributed to him, and other evidence was heard tending to corroborate the juror in respect to the statement attributed to him by the witness Lamoreux. It was shown that Lamoreux was a

very close personal friend of Andrew A. Strauch; that he was active in aiding Strauch in his defense and held frequent consultations with the Strauchs' attorneys during the trial. He admits that he did not say anything to the Strauchs or their attorneys about his having heard Iler express ill-feeling toward Andrew A. Strauch. It also appears that during the trial Lamoreux had a conversation with the trial judge in which he told the judge that Strauch was having a fair trial. It is strange that Lamoreux did not give Strauch or his attorneys or the court the information which he claimed, after the trial, to have in respect to the prejudice of the juror, Iler. His explanation for withholding this information is, that there were a number of other persons present when the statement was made and that he was afraid the others did not hear it. This explanation does not explain. There would have been no occasion for calling such other persons if he had privately given this information to his friend Strauch before the juror was accepted. In respect to the statement sworn to by the witness Frank Roberts the trial court was warranted, in view of the impeachment of Roberts by proof that he had a bad reputation for truth and veracity, in disregading his statement and believing the statement of the juror, Iler. Neither of these witnesses testified that Iler expressed any opinion as to the guilt or innocence of Strauch in regard to the offense for which he was tried. The rule is well established that a verdict will not be set aside because of previously expressed opinions indicating bias or prejudice in the juror unless the proof of bias or prejudice be shown by clear and satisfactory evidence. (*Collins* v. *People,* 194 Ill. 506.) The evidence here is not of that clear and satisfactory character which required the trial court to set aside the verdict and grant a new trial.

*Fourth*—It is next urged by plaintiffs in error that the judgment should be reversed because of improper remarks of an attorney who was aiding in the prosecution, in his

address to the jury. One of the statements to which exceptions were preserved is as follows: "The jury will remember that when Oswald was having the conversation with Hughes in the office, he was running out to see his father every few minutes." This remark was objected to on the ground that the statement was not warranted by the evidence. In ruling upon the objection the court said that the jury were the judges of the evidence, and they knew the evidence and knew whether or not the statement was borne out by the evidence, and if the statement was not sustained by the evidence the jury would disregard it. Plaintiffs in error insist that the ruling of the court was improper. To this we cannot agree. There was evidence tending to show that Oswald Strauch did leave the room where he and Hughes were talking and went out to see his father more than once. The statement that he ran out "to see his father every few minutes" was simply the construction that the attorney, in his argument, put upon the evidence. The trial court very discreetly refrained from telling the jury what had and what had not been testified to. It would have been highly improper for the trial judge to express his recollection or opinion as to the facts that had been sworn to. Further on in his address the attorney said: "Now, I say this, gentlemen of the jury, because they did steal." This language was objected to on the ground that the indictment did not charge stealing. The court said: "No, sir; that is not in the indictment, and I charge the jury, as I did before, that if anything is stated that is not borne out by the evidence they are to pay no attention to it." Again the attorney said: "In this case, gentlemen, I must compliment Andrew A. Strauch as being one of the most cunning rascals I ever knew." Upon objection being made the court said: "That remark is not proper and the jury will pay no attention to it." We think that the record shows that the trial court ruled properly upon the objections now under

consideration. What is proven by direct testimony or is fairly inferable from facts and circumstances proved and which has a bearing upon the issues may be a fair subject for comment by counsel, and if such deductions or inferences tend to fix upon a defendant the wickedness of the crime charged against him, it is within the scope of proper and fair argument to denounce him accordingly. *Crocker* v. *People,* 213 Ill. 287; *People* v. *Hagenow,* 236 id. 514.

*Fifth*—It is finally contended by plaintiffs in error that the evidence is insufficient to support the verdict. The principal contention under this assignment of error is, that the proof failed to show the existence of competition in the letting of the contracts on the day the contracts were, in fact, let. This assignment of error has had our consideration in connection with division 2 of this opinion, in connection with the refusal of instructions there considered. We need not repeat the views already expressed upon that question. In addition to the point already suggested, the plaintiffs in error insist that the proof is insufficient to connect Andrew A. Strauch with the conspiracy. To this we cannot agree. We have considered the evidence with such care as the importance of the case enjoins, and our conclusion is that the jury were entirely justified, not only in finding Andrew A. Strauch guilty, but also fixing his fine larger than the fine assessed against his son. The substance of the evidence upon which we base this conclusion is set out in the fore part of this opinion, and it would serve no useful purpose to recapitulate it.

There are no other reasons urged for a reversal of this judgment. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*