VORIS FOX, APPELLANT, v. FORTY-FOUR CIGAR COM-
PANY, RESPONDENT.

Argued March 9, 1917—Decided June 18, 1917.

1. While a party cannot impeach a witness called by him, which
   is done by showing by general evidence that he is unworthy of
   belief, he may, nevertheless, show that such witness has made
   other and different statements from those to which he has testi-
   fied.  That is contradicting, not impeaching, the witness.
2. A communication made by a party to an attorney after the
   latter's employment has terminated, is not privileged, and the
   attorney may be compelled to disclose the information so
   acquired.
3. When a party writes a letter to a member of the bar whose
   relation as counsel to the former had ceased, if, in fact, there
   ever had been such relationship between them, which letter con-
   tained statements tending to prove a fact concerning the ques-
   tion of master and servant, which was pertinent to the issue,
   the letter is not a privileged communication and is competent
   evidence against the party writing it.

On appeal from the Supreme Court.

For the appellant, *Bourgeois & Coulomb.*

For the respondent, *Clarence L. Cole.*

The opinion of the court was delivered by

WALKER, CHANCELLOR.  This was an action at law for
damages growing out of an accident to the plaintiff by col-
lision with an automobile while he and another were riding
on a motorcycle along a public road in Atlantic county.  On
August 16th, 1915, the plaintiff and his companion were
traveling along the road on the motorcycle, when an automo-
bile driven by a director and officer of the defendant com-
pany approached and a collision occurred, which demolished
the motorcycle and injured the plaintiff.

One defence was that at the time of the accident the car

was not being used for the purposes of the defendant company, and therefore the company was not liable to the plaintiff.

During the progress of the trial, for the purpose of showing that the car was being used for the purposes of the company, and for the purpose of showing an inconsistent statement made by Max Lipschutz, the assistant treasurer, certain letters to W. Frank Sooy, Esquire, a member of the bar, were offered and admitted in evidence. After the testimony had been concluded, the letters were excluded by order of the court, to which an exception was noted. The judge then directed a verdict in favor of the defendant, to which exception was taken, and the plaintiff appealed.

The defendant company in its answer admitted that on the day of the accident it was the registered owner of a certain touring car which was being driven by Max Lipschutz, who was a stockholder, director and officer of the company, but denied that the car was being driven by him as such stockholder, officer, director, agent or employe.

Max Lipschutz was called by the plaintiff and testified that he was assistant treasurer of the defendant company, whose president was his father, Benjamin Lipschutz, and whose assistant secretary was George M. Lex; that the defendant did quite extensive advertising through New Jersey by signs. He testified to the genuineness of a letter dated December 15th, 1915, as to his own and Lex's signatures thereon. Asked what was the object of his tour through South Jersey on the day in question he answered that he had promised his sister, who was sick, a little ride and outing for her friends, and it was for that purpose alone that he took them out that afternoon. Asked whether at that time he was engaged on the business of the company, he answered that he always looked around (meaning for and at the signs), but that the idea of taking them out that day was for pleasure alone. He could not remember whether he stated to the officers of the company that he was going out on the business of the company that day. Shown the letter again and asked to

tell whether he informed the secretary that he was out on the business of the company that day, he first answered "No" and then "Yes." He afterwards said that he had not gone out to inspect the signs on that day.

W. Frank Sooy, Esquire, counselor-at-law, was called by the plaintiff and testified he was one of the firm of Bolte, Sooy & Gill; that he met Mr. Lipschutz, Sr., and Mr. Lipschutz, Jr., and talked the situation over with them; that he was notified by the defendant company that he was representing Max Lipschutz; that he was never formally employed by the company; that he handed the letter in question to Mr. Stern, who was associated with Messrs. Bourgeois & Coulomb, attorneys for the plaintiff, to carry out an agreement he had with Mr. Stern as to the form of answer that would be filed by the company, leaving out, as defendants, Max Lipschutz and his father.

Benjamin Lipschutz testified that he instructed his son Max on the day in question not to take his sister out, but to attend to certain business; that the car had been owned by the company for a couple of years and was bought to entertain customers and for other business; that it was used by his son, by Mr. Funk (secretary of the company) and Mr. Lex; that it was primarily bought for the purposes of the company and the benefit and convenience of its officers, and also for the purpose of taking out his sick daughter.

In view of the testimony of the Lipschutzes—father and son—to the effect that the young man was not out on the business of the company that day, it became highly important to the plaintiff to have in evidence the letter from the assistant secretary to Mr. Sooy, in which it is stated, *inter alia,* that Max Lipschutz would testify at the trial that he was driving the car, *combining both business and pleasure.*

The following is a copy of the letter:

"Benjamin Lipschutz, president and treasurer; Mahlon A. Funk, secretary and sales manager; Max Lipschutz, assistant treasurer; George M. Lex, assistant secretary.

Forty-four Cigar Company
Incorporated.

Lipschutz's                                    Adlon
   44                                         Cigars
Cigars

Business established by Benjamin Lipschutz, 1893.
Main office and factory
N. E. cor. 11th and Wharton streets, Philadelphia.
P. O. address, Southward Station.
Address all communications to company.

December 15th, 1915.

Bolte, Sooy & Gill,
   21 Law Building,
      Atlantic City, N. J.

.Attention of W. Frank Sooy, Esq.

Gentlemen:

The writer has your letter of the 13th inst., addressed to Mr. Max Lipschutz.

The answer as filed by the insurance company is about what we expected, nevertheless, the policy that they issued to us calls for business and pleasure, and as Mr. Max Lipschutz was an officer of the company, we feel, under the terms of the contract, that he had a perfect right to drive the car.

You can rest assured that Mr. Max Lipschutz at the trial will testify.

First—That the company owned the car.

Second—That he was driving the car, combining both pleasure and business.

Third—That he is an officer of the company.

In order to fulfill your wishes in the matter, I am having a postscript in this letter which is signed by Mr. Max Lipschutz.

Very truly yours,<br>
"44" Cigar Company, Inc.,<br>
Geo. M. Lex,<br>
*Asst. Sec.*

L-AH

P. S.

W. Frank Sooy, Esq.,

The facts as covered by Mr. Lex above will be testified to by me at the trial.

Very truly yours,<br>
Max Lipschutz."

The letter was offered to contradict Max Lipschutz, and as an admission by the company. Counsel for the defendant states in his brief that there is not the slightest evidence that the writer, who signed himself "assistant secretary," was such, or that he had authority to bind the company. This is evidently a misconception on the part of the learned counsel who argued the case for the defendant. Max Lipschutz testified that he was the assistant treasurer, and that Mr. Lex was the company's assistant secretary. As to whether they had authority to bind the company was, in all the circumstances of the case, at least, inferable. The question remains, Was the letter properly excluded? We think not. It should have been admitted and the case submitted to the jury.

Counsel for the defendant argues that the attempt to put the letter in evidence was for the purpose of impeaching the plaintiff's witness. This is not so; the attempt was to contradict the witness. The inhibition is only that a party calling a witness will not be permitted afterwards to *impeach* his general reputation for truth or veracity by general evidence tending to show him to be unworthy of belief. *Ingersoll* v. *English,* 66 *N. J. L.* 463. A party to a suit is not precluded from proving the truth of any particular fact by competent testimony in direct contradiction to that to which any of the witnesses called by him may have testified. *Scrieber* v. *Public*

*Service Railway Co.,* 89 *N. J. L.* 183. It is always allowable to show that a witness has made other and different statements than those to which he testifies. Vice Chancellor Pitney, in *Thorp* v. *Leibrecht,* 56 *N. J. Eq.* 499 (at *p.* 502), states that the rule forbidding a party calling a witness to offer evidence for the purpose of impeaching his general character for truth and veracity, falls far short of forbidding the party to show by any legitimate evidence that the witness has testified to what is not true in a matter material to the issue. This rule was approved by this court in *Buchanan* v. *Buchanan,* 73 *Id.* 544 (at *p.* 546). Although, in *Thorp* v. *Deibrecht* and *Buchanan* v. *Buchanan,* the witnesses called by complainants were defendants, the rule is not restricted to such witnesses—that is, witnesses who are adversary parties, but is as broad as the statement in Buchanan *v.* Buchanan (at *p.* 546), that "the rule against impeachment denies the right to impeach the general reputation of the witness for truth, but does not deny the right to show that the whole or any part of the testimony of the witness is untrue." In fact, counsel for defendant concedes this in his brief, where he says: "While the law permits one who calls a witness to contradict him, it does not permit impeachment." Impeachment, as shown, is an attack upon a witness' *general* reputation for truth and veracity; and as that which was attempted in this case was not such an attack, but only a contradiction of the witness' statement, the letter was admissible upon that score.

It is next objected on behalf of the defendant that the letter was a privileged communication by defendant addressed to the attorneys, Messrs. Bolte, Sooy & Gill. While addressed to them, it was marked for the "Attention of W. Frank Sooy, Esq.," who appears to have had charge of the matter, so far as his firm was concerned with it, if at all. Mr. Sooy was called as a witness by the plaintiff and asked whether he, or his firm, represented the defendant company, and answered that he would rather tell what they did; that he did not know how to answer the question rightly. He also stated that he was advised that he was representing Max Lipschutz, and that Judge Starr, he thought it was, would take care of the defendant company. As a fact, Judge

Starr did represent the company, filed their answer and tried the case. It is a fact, also, that Mr. Sooy's bill was made to Max Lipschutz and paid by him. Besides, if Messrs. Bolte, Sooy & Gill were retained by the defendant, their representative capacity ceased on December 11th, 1915, when they received a letter from the defendant, signed by the assistant secretary, Lex, in which the company said: "Please leave the insurance company attend to looking after the "44" Cigar Company's interests and you look after the interest of Mr. Benjamin Lipschutz and Mr. Max Lipschutz, personally, as they no doubt have arranged for."

There is no privilege as to communications made to an attorney after his employment has terminated. 4 *Wigm. Ev.,* § 2304; 40 *Cyc.* 2366.

These two letters were declarations by the company which were admissible in evidence, the one of December 11th to show that the firm of Bolte, Sooy & Gill did not represent the defendant company, at least after that date, and the one of December 15th that the company owned the car, and that Max Lipschutz was one of its officers who had a right to drive it, and was driving it on business as well as pleasure.

The remaining contention on behalf of the defendant is that the testimony failed to disclose that Max Lipschutz, the driver of the automobile at the time of the accident, was a servant of the corporation defendant, *engaged on its business.* Without deciding this question on the evidence which was before the court at the time of the direction of the verdict for the defendant, it is apparent, as stated, that if the letter of December 15th, 1915, had been in evidence, it might have been inferred—if the jury found the other questions raised by the pleading and evidence in favor of the plaintiff—that the defendant company was liable for the consequences of the accident which was the subject of the controversy in the suit. No citation of authority is necessary to support so plain a proposition.

The letter of December 8th, 1915, from the defendant company to Messrs. Bolte, Sooy & Gill, which is referred to in the letter of December 11th, and which indicates that that firm represented the Lipschutzes—father and son—and not

the defendant company, was pertinent evidence and should have been admitted; not so the letter of January 25th, 1916, written to Messrs. Bolte, Sooy & Gill by Max Lipschutz, personally, in which he enclosed his own check, with thanks to Mr. Sooy, or the firm (it not being stated which), for services rendered. This was properly excluded.

The judgment of the court below must be reversed, to the end that a *venire de novo* may be awarded.

*For affirmance*—None.

*For reversal*—The Chancellor, Garrison, Swayze, Trenchard, Bergen, Minturn, Kalisch, Black, White, Heppenheimer, Williams, Taylor, Gardner, JJ. 13.