THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ISADOR LERMAN, PLAINTIFF IN ERROR.

Submitted February 14, 1930—Decided October 20, 1930.

For the plaintiff in error, *Harold Simandl*.

For the defendant in error, *Joseph L. Smith*, prosecutor, and *Joseph E. Conlon*, assistant prosecutor of the pleas.

The opinion of the court was delivered by

WALKER, CHANCELLOR. The plaintiff in error was convicted in the Essex Quarter Sessions on an indictment charging assault and battery upon, and criminal abuse of, Sally Bigams, a female child over the age of twelve years and under the age of sixteen, and was sentenced therefor. The entire record of the proceedings had upon the trial was taken up to the Supreme Court on error, under section 136 of the Criminal Procedure act, and that court affirmed the conviction in an opinion *per curiam*.

Only one question is assigned for error here. In the brief submitted on behalf of the plaintiff in error it is stated that the "error complained of deals with the erroneous admission of evidence by the trial court and was laid under assignment and reason No. 5 in the court below," and that was argued by counsel. In the brief submitted for the state it is said that the "only assignment argued by plaintiff in error is as-

signment 5, which brings for error the rebuttal testimony of Margaret T. Dugan on behalf of the state." The point, among others, was argued in the court below and that entitles plaintiff in error to argue it here.

The crime was committed on the evening of May 21st, 1927. The plaintiff in error, testifying in his own behalf, denied the assault. He was asked on cross-examination:

"*Q.* Before Sally left your employ, you went to Miss Dugan, being referred to her by the missing persons buerau, and you told Miss Dugan that your wife had left you, that she was running around with a colored man, and that you wanted to make a complaint against her? *A.* I didn't."

In rebuttal the state called Miss Dugan and, over objection, she was permitted to testify that she saw the plaintiff in error, at police headquarters, in the missing persons bureau on July 26th. And she was asked the following question:

"*Q.* Did Mr. Lerman on that occasion tell you in effect that his wife had been absent from the home for two months or more, that she had absented herself on frequent occasions, that she was running around with a negro, and did he ask you if he could make a warrant out and have a warrant made out for her arrest?"

The question is the question which is made the subject of the assignment and reason number 5, and it was objected to, and the last part, namely, that she was running around with a negro, and did not he ask you if he could make (take) a warrant out and have a warrant made out for her arrest, was stricken out as not germane, and the witness asked: "Did he not tell you that?" (meaning the first part of the question as to whether Lerman told witness that his wife had been absent from home for two months or more, and had absented herself on frequent occasions), and she answered: "He did."

The defendant himself testified that his wife was home during all the year of 1927. Sarah Lerman, his wife, testified in effect that she was present in the household at the time the alleged assault was committed; she said that she could not remember the particular night of Saturday, May 21st, 1927, but there was no assault committed in her flat at the time

mentioned. Anna Lerman, daughter of the defendant, said that Sally Bigams ceased working at their house about the middle of the month of May, 1927; that she never saw her father do anything to Sally Bigams and never heard her scream or cry out. David Lerman, son of the defendant, testified that Sally Bigams ceased to work late in May, he thought. He never heard her cry out, never saw his father attack her. William Lerman, son of defendant, testified that Sally worked for his parents until May 21st, he thought; further, he said it was May 21st; he never saw his father attack Sally and never heard her scream or cry out. Pauline Alter was living at home with her daughter, Mrs. Lerman, in May, 1927; she remembered Sally Bigams working there; she did not remember the date she stopped so working; she never saw Lerman do anything to Sally, never heard her scream or cry out.

So it will be seen that besides a denial by the defendant of the incriminating circumstances, the theory of the defense was an attempt to show that so many of his relatives were present in his house at the time of the assault that they would have been cognizant of it had it happened, and that, therefore, it did not happen. So it became the duty of the state to show that the defendant, Lerman, had made a statement to Miss Dugan on July 26th, 1927, that his wife had been absent from home for two months or more (which tended to show that she was not present May 21st, 1927), and that she had absented herself on frequent occasions. This contradicted the defendant and discredited him as a witnesss; and was entirely proper.

In *State* v. *Butler,* 7 *N. J. Mis. R.* 868· (at *p.* 870), the Supreme Court said that the cross-examination of the physician called in behalf of the defense, was in all respects proper, and it would have been a grave miscarriage of justice if the prosecution had not been permitted to probe into the meaning of the physician's testimony. The testimony of this physician made necessary the calling of an expert of the defense and the admission of his testimony was both proper and discreet. The defense having offered medical testimony tend-

ing to show that the crime could not have been committed by the defendant, the state was under a duty to offer evidence in rebuttal. Such testimony is not collateral.

In *State* v. *Black*, 97 *N. J. L.* 361, the Supreme Court held that as a general rule, any fact that bears against the credibility of a witness is relevant to the issue being tried, and the party against whom the witness is called has a right to have that fact laid before the jury, in order to aid them in determining the credit to be accorded to the person testifying; citing *Prout* v. *Bernards Land, &c., Co.* (*Court of Errors and Appeals*), 77 *Id.* 719, wherein it was held that cross-examination on matters either directly in issue or directly relevant to the issue, is a matter of right and its exclusion is error.

While the admission of this testimony to contradict and affect the credibility of the defendant as a witness is referred to in the briefs as impeachment of the witness, that is not so. The Court of Errors and Appeals in *Lenz* v. *Public Service Railway Co.*, 98 *N. J. L.* 849, held that impeachment is an attack upon a witness' general reputation for truth and veracity, and is not, strictly speaking, the effect which is produced upon the credibility of his testimony by proof of contradictory statements made by him upon a matter in issue or relevant thereto.

In the case at bar there was no attack upon the witness' general reputation for truth and veracity, but only a contradiction of his statement, and that was not impeaching, but contradicting the witness. *Fox* v. *Forty-four Cigar Co.* (*Court of Errors and Appeals*), 90 *N. J. L.* 483. It was admissible.

The result reached is that the judgment under review should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, CAMPBELL, BODINE, DALY, DONGES, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, WELLS, JJ. 12.

*For reversal*—None.