19 N.J. Super. 600 (1952)
89 A.2d 56
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANTHONY J. SALIMONE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 21, 1952.
Decided May 26, 1952.
*602 Before Judges EASTWOOD, BIGELOW and FRANCIS.
Mr. Joseph A. Murphy argued the cause for the plaintiff-respondent (Mr. Theodore D. Parsons, Attorney-General, attorney; Mr. Thomas P. Cook, on the brief).
*603 Mr. Ralph W. Chandless argued the cause for the defendant-appellant (Messrs. Chandless, Weller, Kramer & Frank, attorneys).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The defendant, Anthony J. Salimone, Chief of Police of Park Ridge, Bergen County, was tried and convicted by a jury before the Bergen County Court, Law Division, on an indictment charging him and others with unlawfully conspiring to make book contrary to R.S. 2:119-1. By this appeal, he challenges the validity thereof.
The indictment charged that Salimone, together with Anthony Rubelleni, Peter Ferrara and Joseph Ferrara, on May 8, 1950, and on divers other days and times between that date and May 22, 1950, unlawfully conspired to make book upon the running of horses, mares and geldings and among the overt acts in furtherance of the conspiracy, specified the following: (1) the operation of a bookmaking establishment in a room of a dwelling house at 163 Morningside Avenue, Park Ridge, New Jersey, the residence of Conrad Grube; (2) the payment by Salimone of $25 per week to Grube for the use of his home and the telephone installed therein for the conduct of the operation.
Conrad Grube and one Manny Streit were tried and convicted and Joseph Ferrara pleaded guilty under separate indictments arising out of the same operation. On the State's motion, a severance was granted as to the trial of the two defendants, Joseph Ferrara and Peter Ferrara. At the commencement of the trial of the issue before the County Court, the assistant prosecutor stated: "I can say for my case that as far as Peter Ferrara is concerned, I don't think the State can proceed against him, because in the preparation of this case I do not feel that the State has a case against him." The trial then proceeded as against Rubelleni and Salimone.
*604 At the conclusion of the State's case, the court directed a verdict in favor of defendant, Rubelleni, on the ground that the proofs were insufficient. Salimone was convicted as charged and sentenced to one and one-half to three years in State's Prison.
The defendant denies the accusations of the indictment and the testimony of Grube and contends that inasmuch as the case had been dismissed as to Rubelleni because Joseph Ferrara could not identify him, and the prosecutor having admitted that the State had no case against Peter Ferrara, the only conspiracy that could have existed was between Joseph Ferrara and Chief Salimone, and it is argued that there is no proof that Salimone ever knew or heard of Joseph Ferrara.
Grube, who had not been named in the indictment as a co-defendant or as a co-conspirator, testified as a State's witness. Therefore, defendant contends that his acts or testimony concerning the criminal conspiracy between Grube and Ferrara cannot be binding upon Salimone; that the mere assertion that Salimone gave Grube $25 does not establish the criminal conspiracy; that the conviction upon the indictment for conspiracy is against the weight of the evidence; that by reason of the dismissal of the action as to Rubelleni, and the trial court's authorization of a severance as to the defendants Ferrara, there is no one with whom Salimone could have conspired, and that by its very nature conspiracy includes two or more persons; and that the court erred in refusing to permit one William Bauer to testify in refutation of Grube's denial that the witness had told Bauer that the prosecutor had advised him to involve Salimone in this matter, under threats of contempt for failure to do so.
Conrad Grube testified that the defendant, Anthony Salimone, approached him in the company of Peter Ferrara, some time in March or April, 1950, and asked him if he wanted to rent out his telephone "for bookmaking on horses"; in response, Grube informed Salimone that his telephone had been disconnected for non-payment of a delinquent bill approximating *605 $33, in addition to which there would be a reinstallation charge; that, accordingly, Grube ascertained the necessary amount for reinstallation of the telephone and obtained the money to pay same from Salimone, whereupon the telephone was reinstalled, the number was furnished by Grube to Salimone and bookmaking activities were thereupon conducted at his home; that, in connection therewith, Salimone paid Grube $25 per week for the use of his telephone, deducting therefrom each week a certain amount until the amount advanced by Salimone had been paid. One Joseph Ferrara testified that he was engaged by one Manny Streit "to make book" at Grube's home, to be paid therefor the sum of $50 per week; that he and Streit proceeded to take horse racing bets at Grube's home using his telephone in the bedroom, and that the bookmaking operation continued for 14 days thereafter until the premises were raided by the Bergen County law enforcement authorities on May 22, 1950. James Stewart, a Bergen County detective, testified that he participated in the raid at Grube's home and while there, Detective Millington and he found, in a room in the back of Grube's house, "a setup of a table, a telephone, and a radio, and paraphernalia for the purpose of making book"; that Detective Millington "sat at the phone and took the incoming calls and recorded those bets."
There was plenary proof to support a finding of defendant's guilt of conspiracy to violate the bookmaking statutes. In State v. Gregory, 93 N.J.L. 205, 207, 210 (E. & A. 1919), it is stated:
"* * * One who participates in the corrupt agreement with knowledge that it is corrupt, and that what he is doing is in furtherance of that agreement, would be as guilty as if he had originally conspired, * * *"
And in State v. Garrison, 130 N.J.L. 350 (Sup. Ct. 1943), it was held that: "A conspiracy may be proved by overt acts done in pursuance thereof." Cf. State v. Klausner, 4 N.J. Super. 427, 429 (App. Div. 1949).
*606 In State v. Lennon, 3 N.J. 337 (1949), Mr. Justice Heher, speaking for the Supreme Court, said of a conspiracy to commit a criminal act:
"`The plan is itself a wrong which, if any act be done to effect its object, the state has elected to treat as criminal.' Gebardi v. United States, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206 (1932). See, also, United States v. Rabinowich, 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211 (1915); Vannata v. United States, 2 Cir., 289 Fed. 424 (1923).

* * * * * * * *
It is not requisite that the conspirators know each other, or that they should all join in the common purpose at the same time. People v. Strauch, 240 Ill. 60, 88 N.E. 155 (1909); Burdick's Law of Crime, sec. 999."
The defendant's contention that he cannot be legally held, in that, at best, he has conspired with himself, is based upon the premise that as the result of the severance granted to the defendants, Peter and Joseph Ferrara, and the directed verdict by the court as to defendant, Rubelleni, and the statement by the assistant prosecutor at the trial with respect to the indictment against Peter Ferrara, he remains as the sole defendant on the conspiracy indictment. We cannot agree with the defendant's contention. The indictment of defendants, Peter and Joseph Ferrara, has not been nolle prosequied nor dismissed, but is still pending. The severance of the trial as to the defendants Ferrara does not vitiate nor dismiss the indictment against the Ferraras, but merely indicates the State's right to try them separately. The evidence of Salimone's arrangements for the use of Grube's telephone and home for the conduct of the bookmaking operation and the operation thereof by Joseph Ferrara, reasonably establishes a plan for the perpetration of an unlawful object, i.e., bookmaking operations. Assuming, but not conceding, that the prosecutor's statement as to Peter Ferrara eliminated him as a defendant, and giving effect to the court's acquittal of Rubelleni, the evidence supports a finding that a criminal conspiracy was established *607 and effectuated as to Joseph Ferrara and Salimone. State v. Lennon, supra, and State v. Klausner, supra.
"No written, formal, or definite agreement is necessary to constitute a conspiracy, its existence being generally a matter of inference from the acts of the parties * * *. Previous acquaintance between the conspirators is unnecessary, nor is it necessary that each conspirator should have seen the others, or have knowledge as to who all the members of the conspiracy are. It is not essential that the parties meet or that they confer and formulate their plans, nor that each conspirator have knowledge of the scope of the conspiracy or the means by which the purpose is to be accomplished. * * *" 15 C.J.S. 1062, Conspiracy, sec. 40.
It has been held by our courts that where it appears that two or more persons conspired to commit an offense, everything done, said or written by one of them during the existence of the conspiracy and in the execution or furtherance of that common purpose, is admissible in evidence against the others. State v. Seidman, 107 N.J.L. 204 (Sup. Ct. 1931), affirmed State v. Fischman, 108 N.J.L. 550 (E. & A. 1931); State v. Guida, 118 N.J.L. 289 (Sup. Ct. 1937), affirmed 119 N.J.L. 464 (E. & A. 1938).
We now come to the troublesome question: Did the court err in excluding the testimony by defendant's witness, Bauer, of a prior contradictory statement alleged to have been made by the State's witness, Grube. Grube was cross-examined quite extensively in an effort to show his motives of ill will and bias towards the defendant, Salimone. In connection therewith, Grube was interrogated as to whether he had told one William Bauer that the prosecutor had asked Grube to implicate Salimone and that if he did not comply with such request, Grube would go to jail for contempt. Grube denied that he had made any such statement or that he had ever been approached by a prosecuting officer about any such proposal. Defendant then put Bauer on the witness stand and sought to prove by him that the statement which Grube had denied had been actually made by Grube to the witness, Bauer, contending that he was seeking to establish Grube's motive in testifying against Salimone. On the State's objection, *608 the court refused to permit the witness Grube to answer the question. Defendant contends that he suffered manifest harm by the court's ruling, arguing that the purpose of the question was to attack Grube's credibility. The State asserts that its objection was based upon the ground that it was an attempt to introduce a collateral issue and that the same was inadmissible.
"The interest, motive, bias, or prejudice of a witness may affect his credibility and justify the jury, whose province it is to pass upon the credibility of an interested witness, in disbelieving his testimony. * * * The fact that the witness is a defendant in a criminal prosecution, or is a participant in the offense or in a related offense, creates an interest which affects his credibility." 58 Am. Jur., Witnesses, Sec. 866, 868, p. 495, 497. Commenting on the admissibility of contradictory statements of a witness, Professor Wigmore in his work on Evidence, Vol. III, p. 687, Sec. 1018, stated:
"Since, in the words of Chief Baron Gilbert (ante, sec. 1017), it is `the repugnancy of his evidence' that discredits him, obviously the Prior Self-Contradiction is not used assertively; i.e. we are not asked to believe his prior statement as testimony, and we do not have to choose between the two * * *. We simply set the two against each other, perceive that both cannot be correct, and immediately conclude that he has erred in one or the other,  but without determining which one. It is the repugnancy and inconsistency that demonstrates his error, and not the superior credibility of the prior statement. Thus, we do not necessarily accept his former statement as replacing his present one; the one merely neutralizes the other as a trustworthy one."
"Particular circumstances and expressions indicating bias are provable by extrinsic testimony; they are therefore also provable in contradiction." Wigmore, supra, Sec. 1005, p. 662, and cases cited therein; also Sec. 948, "Bias," p. 498. If a suitable foundation be laid therefor, contradictory statements by a witness may always be shown except when the matter stated is collateral or irrelevant. It was so held in the case of Weilbacher v. Rudlin, 125 N.J.L. 631, 632 *609 (E. & A. 1941), citing Fox v. Forty-Four Cigar Co., 90 N.J.L. 483 (E. & A. 1917); State v. Black, 97 N.J.L. 361 (Sup. Ct. 1922); State v. Lerman, 107 N.J.L. 77 (E. & A. 1930), wherein the court held:
"* * * The purpose is to impeach the witness and because the effect may be to bar recovery this results merely from the failure of the plaintiff to sustain the burden of proof. * * * To discredit an unworthy witness is trial counsel's duty. Previous statements incompatible with present testimony is one of the methods used."
In the case of State v. Lerman, supra, cited in the Weilbacher case, the Court of Errors and Appeals held at p. 81:
"In State v. Black, 97 N.J.L. 361, the supreme court held that, as a general rule, any fact that bears against the credibility of a witness is relevant to the issue being tried, and the party against whom the witness is called has a right to have that fact laid before the jury, in order to aid them in determining the credit to be accorded to the person testifying; citing Prout v. Bernards Land, etc., Co. (Court of Errors and Appeals), 77 Id. 719, wherein it was held that cross-examination on matters either directly in issue or directly relevant to the issue, is a matter of right and its exclusion is error."
Cf. State v. Bassone, 109 N.J.L. 176 (E. & A. 1932); Wassmer v. Public Service Electric & Gas Co., 122 N.J.L. 367, 373 (E. & A. 1939); Fox v. Forty-Four Cigar Co., supra. Also see R.S. 2:97-13, now N.J.S. 2A:81-12.
The State argues that the defendant's line of examination with respect to the conversation between Grube and Bauer raised only a collateral issue and Bauer's testimony, therefore, was inadmissible. With this contention we are not in accord. Grube was the principal; in fact, the sole witness who had testified to specific and inculpatory acts of Salimone. Salimone took the stand and denied the testimony involving him in the alleged conspiracy. It will be readily seen that the credibility of Grube's evidence was a most important factor for the jury's consideration in determining Salimone's guilt or innocence. The court's denial of the defendant's attempt to offer the alleged contradictory testimony *610 of Bauer was prejudicial to the defendant and constituted harmful error. In applying the test of collateralness, "it is obvious that there are two classes of facts of which evidence would have been admissible independently of the Self-Contradiction: (1) facts relevant to some issue in the case under the pleadings; (2) facts admissible to discredit the witness as to bias, corruption, or the like." Wigmore, supra, Sec. 1021, p. 694; Sec. 1022, (2), p. 697. See also State v. Dichter, 95 N.J.L. 203 (E. & A. 1920).
The judgment of conviction is reversed and the matter is remanded for trial de novo.