| 68 | 299 |
| 69 | 525 |

</div>

THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. PETER HERNIA, PLAINTIFF IN ERROR.

Argued June 27, 1902—Decided November 17, 1902.

1. In a criminal trial, when question arises as to the admissibility of a statement made by the prisoner which amounts to a confession of his guilt, it becomes the duty of the trial court to ascertain whether such statement was made by the prisoner of his own free will, or because of threats held over him, or of hopes held out to him.

2. The fact that the prisoner was in custody at the time that he made such statement, does not of itself compel the inference that illicit methods had been practiced—it, however, is a pertinent circumstance to be considered.

3. When such an inference is legitimate, it may be met by proof that the prisoner had spoken of his own volition, after having been assured of his right to remain silent.

4. Where no ground exists for the inference that illicit practices had been employed, no reason exists for the exhibition of rebutting testimony.

5. The prosecutor of the pleas, in addressing the jury, made statements reflecting upon the prisoner in respects not warranted by the testimony. The trial court, having been requested by the prisoner's counsel to instruct the jury in reference to such remarks of the prosecutor, did so in an unexceptionable manner. No other request was made. *Held*, that authority to grant a new trial upon the ground disclosed has not been vested in this court.

On error to the Bergen Oyer and Terminer.

For the state, *Ernest Koester*, prosecutor of the pleas.

For the plaintiff in error, *Peter W. Stagg.*

The opinion of the court was delivered by

GARRISON, J.    The judgment of death pronounced upon the defendant on an indictment for murder is here upon a record that is certified in its entirety under the statute. The causes for reversal filed in this court raise certain questions, which will be considered in their order.

The facts to be premised are that on the 4th day of March the defendant went to the butcher shop of Barney Kanter, at Wallington, in Bergen county, and asked for meat for his dog, which Kanter refused to give him. The defendant at the time said, "If you will not give me meat I will fix you for it." The butcher then threatened to "shove him out," whereupon the defendant left the shop, saying as he went, "You God damned sheeney, I'll fix you for this." This threat he repeated at a near-by hotel, where he complained that Barney "wouldn't favor him with five cents' worth of meat for his dog." About an hour later the defendant returned to the butcher shop and again asked for meat, repeated his former threat and drew a pistol, which he fired twice, inflicting upon Kanter a mortal wound. Afterward, when arrested, he said, "I sold my life for five cents." Convicted of murder in the first degree, the defendant brought this writ of error.

The first ground for reversal is the overruling of the question, "Is it not a fact that the people of the town were all excited on account of the flood?" and also the question, "Is it not a fact that during the four days that this town was under water the people in the town, especially those whose houses were filled with water, were very excited?" The physical fact upon which these questions were based, to wit, the flooding of Paterson and Wallington, was in evidence without objection, and nothing in these questions or in the remarks of counsel tended in any way to direct the attention of the witnesses to the mental condition of the defendant, which was the only pertinent object of inquiry. The questions were obviously irrelevant, and were properly overruled.

The second ground of complaint is that the testimony that the defendant had said, to the officer who arrested him, "I have sold my life for five cents" was a confession of guilt, and

should not have been received without affirmative proof by the state of its voluntary nature. No such ground of objection was made at the trial; in fact, no ground at all for excluding the testimony appears to have been stated. Assuming that the defendant is entitled to review the reception of this testimony, and also that the testimony was in effect a confession, the question of its admissibility has been considered in the light of the principles that govern admissions of that nature.

· The general rule that incriminating statements made by a defendant are admissible on behalf of the state is qualified by another rule which makes it the duty of the trial court to ascertain that such statements, when they amount to admissions of guilt, were made by the defendant of his free will, and not because of threats that were held over him or of hopes that were held out to him. Inasmuch as ordinarily the officers of the law alone are in a position to make good such threats or promises, this subsidiary rule finds application chiefly in cases where the defendant is a prisoner in their custody. The fact of custody, however, standing alone, raises no presumption that illicit methods had been employed. · Such an inference arises, if at all, from the circumstances of each case, among which the fact of custody is to be included and considered. To repel such an inference the state may, among other things, show that the prisoner, before making the statement sought to be proved against him, had been informed that he was not under any compulsion to speak, and that if he chose to speak, he did so without any inducement being offered to him. Such preliminary information, which is usually referred to as cautioning or warning a prisoner, is not, however, an essential step in the orderly adduction of testimony of this sort, although it sometimes seems to be so regarded. The qualifying rule, in its nature and reason, is limited to those cases in which the circumstances raise, or are capable of raising, the inference which such a warning would tend to rebut. Where no ground exists for the inference, no reason exists for the warning, and the prisoner's statement is admissible because of its evident spontaneity. To this category the statement in the present case belongs.

The defendant had just been apprehended by an officer, who knew, as yet, nothing of the affair, and who was making no effort to extract from the prisoner any statement bearing upon his guilt. Immediately, in reply to the natural question, "What did you do?" the prisoner exclaimed, "Well, I sold my life for five cents." If this exclamation, for it was little more, is to be treated as a confession, it is clear that it was, in the fullest sense, voluntary, and that it was made without any possible suggestion of compulsion or cajolery. The question of its admissibility was for the trial court, and the manner in which it was disposed of meets with our unqualified approval.

A further ground of reversal is that the trial court took from the jury the right to find that the defendant was guilty of manslaughter. The language of the judicial charge upon this point was as follows:

"There appears in the evidence no ground for legal justification or excuse or palliation of that act, and, under the law of this state, the act committed, under the circumstances disclosed by the testimony in this case, if the witnesses are to be believed, was murder."

This language correctly stated the practically undisputed testimony, and gave to it, if believed, its only legal effect. It was a proper instruction. *State* v. *Young,* 38 *Vroom* 223.

The next group of reasons for reversal is that the language of the judge's charge, as interpreted by counsel for the prisoner, either assumed the existence of testimony or else directed the jury how they should regard certain of the proofs. These assignments can be accounted for, and must be disposed of upon the theory that the judge's charge has been misconceived, for nothing in it justifies either of the above criticisms.

Finally, it is urged that the prosecutor of the pleas, in addressing the jury, went outside of the testimony to make statements that reflected upon the prisoner. This claim is, unhappily, well founded in fact. The language of the prosecutor, which appears in the following excerpt from the remarks of the trial judge, was not only reprehensible, but was, as it appears, judicially reprehended. Before submitting the

case to the jury, the trial judge said, touching the above-mentioned incident of the trial:

"Gentlemen of the jury, the prosecutor, in the progress of his summing up, made some remarks to which the counsel' for the defendant called my attention after the prosecutor had passed entirely beyond the subject to which the remarks related. He objects to these remarks, and asks me to instruct the jury with reference to them. These are the remarks to which. the counsel for the prisoner calls attention—I quote, now, the language of the prosecutor:

" 'Gentlemen, this defendant comes from a land where there is a constitutional hatred of a Jew. I think I am talking from history when I say that in Russia a Jew has no rights which any citizen is bound to respect.

" 'This man is a Slav. He comes from a land where the Jew is oppressed—a country where he is taught by custom, handed down by tradition, to hate the Jew; and when he comes to our own free land, and, perhaps, does not know the law, he thinks he has a right to shoot down the Jew.

" 'This man comes from Russia, where they know no law. In his country a Jew has no rights which a Gentile must respect. In Russia, if a Jew refuses a Gentile, he goes to Siberia for that.'

"Gentlemen, you are to decide this case upon the evidence brought here, and there is no evidence in this case with regard to what this prisoner was taught by custom, or what was handed down to him by tradition, respecting the rights of Jews or the rights of Gentiles. There is no evidence in this case that in Russia they know no law, and there is no evidence in this case that if a Jew refuse a Gentile, he is sent to Siberia for that. There is no evidence in this case that in Russia there is a constitutional hatred of a Jew, or that in Russia a Jew has no rights which a citizen is bound to respect, or that this defendant comes from a country where the Jew is oppressed; so that these matters are entirely outside of your considera-tion. You are to decide this case upon the evidence that is laid before you, and not upon these expressions, which are outside of the evidence and uttered by the prosecutor. I don't

think that there is anything more that I can say about that matter to satisfy counsel for the defendant."

The legal aspect of this branch of the case is that the trial court, when requested by the counsel for the prisoner to instruct the jury with reference to the remarks of the prosecutor, did as he was requested; that no other request was made and no exception to the instruction was taken. No error is assigned upon this point, but, under his statutory causes for reversal, counsel asks this court to set aside the verdict because the prosecutor erred in using the language above cited, and because the court "did not denounce the language sufficiently strong to take away the prejudice that had already formed in the minds of the jury." These matters do not come within the reviewing power of this court, proceeding as at common law, and in the present case are not brought within the broader procedure sanctioned by the statute. The complaint is not with respect to a ruling upon testimony or to any error in the charge of the court. No matter of discretion is involved, as might have been the case had the trial court been requested to stop the trial. The court was requested by counsel representing the prisoner to instruct the jury, and did so in an unexceptionable manner. Without extenuating the error of the prosecutor, due, doubtless, to the excitement of the trial, rather than to premeditated license, the response to the demand now made is that authority to grant a new trial upon the grounds here presented rested with the trial court, and has not been vested in this court. The measure of the defendant's rights is the protection afforded him by the law. The judgment of the Bergen Oyer and Terminer is affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, COLLINS, FORT, GARRETSON, PITNEY, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM.    11.

*For reversal*—None.