THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JOSEPH KWIATKOWSKI, PLAINTIFF IN ERROR.

Submitted July 8, 1912—Decided November 18, 1912.

1. A witness is always at liberty to refresh his memory before testifying. He may even do so in court while upon the witness-stand by reading from memoranda made by himself at or near the time of the events recorded. Instead of doing this, a witness may, if he chooses, refresh his memory out of court by reading a memorandum made by himself of and concerning the incident to which he is about to speak on the witness-stand, and the testimony thus given will be unimpeachable so far as the manner of refreshing his recollection is concerned.

2. The prosecutor of the pleas interrogated one of the witnesses as to what he testified to upon a former trial of the defendant, and whose testimony on the trial under review apparently showed considerable lapse of memory during the interval between the two trials; this was not an attempt by the party offering the witness to impeach his character for truth and veracity, but to revive his recollection as to matters to which he had testified before, and concerning which his memory appeared to have lapsed, and so was clearly admissible upon the theory that the prosecutor was surprised. Counsel, in thus exploring the mind of a witness who has surprised him, is at liberty to go only so far as the trial court, in the exercise of a sound discretion, may deem proper.

3. The finding of the trial court that a defendant's confession was voluntarily made will not be reversed if there be any legal evidence to support it.

4. The provision of section 107 of the Crimes act (*Comp. Stat., p.* 1780), that in no case shall the plea of guilty to murder be received upon any indictment, and if upon arraignment such plea should be offered, it shall be disregarded and the plea of not guilty entered, and the jury, if they find the accused guilty, shall designate by their verdict the degree of guilt, concerns alone the practice upon a prisoner's arraignment and trial on an indictment for murder, and does not operate to prevent the conviction of the prisoner upon a voluntary confession made by him even if there be no corroborating evidence, provided the *corpus delicti* be proved.

5. The only limitation upon the use as evidence against him of a prisoner's confession of murder, voluntarily made, is the want of proof of the *corpus delicti*. If death, through criminal agency, be proved, and a man confesses to having caused that death, he may be convicted of murder on his confession.

---

On error to the Hudson Oyer and Terminer.

For the plaintiff in error, *John Milton* and *Charles M. Egan.*

For the state, *Pierre P. Garven,* prosecutor of the pleas.

The opinion of the court was delivered by

WALKER, CHANCELLOR. Upon an indictment for murder the plaintiff in error was found guilty of murder in the first degree by a jury in the Court of Oyer and Terminer of the county of Hudson, and brings a writ of error to this court. The entire record of the proceedings had upon the trial in the court below was returned into this court by the plaintiff in error under section 136 of the Criminal Procedure Act (*Pamph. L.* 1898, *p.* 866), and, under section 137, *ibid.,* the plaintiff in error has specified certain causes in the record upon which he relies for relief and reversal. Those which challenge the attention of the court are Nos. 4, 5, 12 and 13.

Specification 4 is directed to the refusal of the trial court to strike out the testimony of Dr. A. P. Haskins, the assistant county physician of Hudson, who made the autopsy on the body of the deceased, upon the ground that while the witness testified apparently from unaided recollection of the facts, nevertheless, prior to going on the stand he had

refreshed his memory by reading a memorandum which he had made. The fact that he had made notes and had refreshed his recollection from them was brought out on cross-examination. The doctor was asked on cross-examination if he made notes at the time of the autopsy, and he replied that he did. Also if he had referred to those notes then recently and he replied that he had on that day, that is, the day he testified. There was no error in this.

The Court of Errors and Appeals, in *Myers* v. *Weger*, 33 *Vroom* 432 (at *p.* 441), said:

"Nor is there any substance in the objection that the witness should not have been allowed to read to the jury the above-mentioned extract. It is said that a memorandum is for mere reference, and can be used only to excite the recollection. This is too narrow a statement of the rule. So strict a limitation would make memoranda unavailable in many cases where they are of value. The use by a witness of his own memorandum, made at or near the time of the events recorded, is not merely to refresh the memory by reviving faint impressions, but also to supplement the memory by preserving details that would otherwise be forgotten. In a case of the latter class the witness is able to prove the details, not by remembering the particulars that compose them, but because the circumstances under which the memorandum was made afford satisfactory assurance that at the time of the entry its contents were known by the witness to be true. It follows that a witness, in using his own memorandum, may not merely refer to it, but may also testify from it. It may be added that the use of a memorandum rests very much in judicial discretion."

A witness is always at liberty to refresh his memory before testifying. He may even do so in court while upon the witness-stand by reading from memoranda made by himself at or near the time of the events recorded. Instead of doing this a witness may, if he chooses, refresh his memory out of court by reading a memorandum made by himself of and concerning the incident to which he is about to speak on the witness-stand, and the testimony thus given will be

unimpeachable so far as the manner of refreshing his recollection is concerned. It is quite safe to say that almost every witness before going upon the stand refreshes his memory concerning the things about which he is called to testify, and if he is without data made by himself he is apt to ruminate upon the subject and recall to his mind the details of the occurrence to which he is about to speak.

Specification 5 relates to the interrogation by the prosecutor of the pleas of one of the witnesses as to what he testified to upon a former trial of the defendant, and whose testimony on the trial now under review apparently showed a considerable lapse of memory during the interval between the two trials. In our opinion there was no error committed by the trial judge in admitting the questions under consideration. The precise point was passed upon by the Supreme Court in *State* v. *Johnson*, 44 *Vroom* 199, where (at *p.* 201) it was said:

"Another ground of error alleged is that the court below admitted illegal evidence. A witness for the state under examination had failed to identify the liquor drank in the booth as beer. The witness was then asked 'if he had not testified before the grand jury that it was beer that was in one or the other of the bottles.' The witness was permitted to answer over objections affirmatively that he did. The objections were that a party could not thus interrogate his own witness, and that the question was leading. The learned trial judge regarded the situation as one of surprise, and on that ground admitted the questions as, we think, rightly. 3 *B. W. Jones Ev.* 858. The allowance of a leading question was a matter in the discretion of the court. There was no error in the admission of the question objected to."

The prisoner's counsel relies upon *Ingersoll* v. *English*, 37 *Vroom* 463. But that case does not apply. It was there decided that a party offering a witness will not be permitted to impeach his character for truth and veracity, but that the rule does not preclude proving the truth of any particular fact by other competent testimony in direct contradiction to what the witness may have said. In the case at bar we find

no attempt to impeach the particular witness' character for truth and veracity, but an attempt to revive his recollection as to matters which he had testified to before, and concerning which his memory appeared to have lapsed. The prosecutor was surprised at the testimony given on the trial of the case and clearly had the right to probe the witness as he did. Counsel in thus exploring the mind of a witness who has surprised him, is at liberty to go only so far as the trial court, in the exercise of a sound discretion, may deem proper.

The principal reason relied upon for relief and reversal is the admission of a signed confession of guilt made by the prisoner to Detective Sergeant Curry of the Jersey City police department. The precise objection is that the confession was made by the defendant through hope held out to him in a promise made by the interpreter called in by the police, and that it, therefore, was not a voluntary confession.

Let us see now what are the facts regarding the making of the confession to which the law must be applied. It was obtained through interrogatories put to the defendant by a Polish interpreter. The interpreter on the witness-stand was asked, on cross-examination, whether the prisoner did not tell him something before he told him that he had killed his wife, and he answered yes, saying that the prisoner asked him if he could bail him out, to which he, the interpreter, replied that he would if he could. He told the defendant that the police captain had told him, the interpreter, that he, the prisoner, was charged with murder. The witness was further asked if at that time (just before the confession) the prisoner had asked him if he would get him bailed, and he said it was the same time. He was further asked if it was in answer to that question (as to bail) that he said he would help him (prisoner) as much as he could, and he answered yes. The interpreter then proceeded to ask the questions and interpret the answers as they appear in the written confession.

It is not necessary to review at length the law regarding the admissibility in evidence of confessions made by persons charged with crime. That was very thoroughly done by Mr.

Justice, afterwards Chief Justice, Depue in *Roesel* v. *State,* 33 *Vroom* 216. In that case it was held that the burden of proof is on the state to show that a confession is voluntary, and that this preliminary examination is for the court and comprises a mixed question of law and fact; that if the conduct of the officer obtaining the confession be reprehensible by reason of threats or promises used such conduct may be used before the jury to affect his credibility or the truthfulness of the confession, and that if there be a conflict of evidence as to whether the confession was or was not voluntary, if the court decide that it was voluntary and admissible, the question may still be left to the jury with the direction that they should reject it if upon the whole evidence they are satisfied that it was not the voluntary act of the defendant.

The observation of Mr. Justice Depue that after the court has passed upon the preliminary question concerning the voluntariness of a confession and has admitted it in evidence it may still be left to the jury to reject the confession if they think it was involuntary, is regarded as *dictum,* and was expressly overruled in *State* v. *Monich,* 45 *Vroom* 522, 528, where Mr. Justice Pitney, afterwards Chancellor, speaking for this court (at *p.* 529), said:

"The determination of the question whether a declaration that is offered as a dying declaration was in truth made under a sense of impending death, like the determination of the cognate question whether a defendant's confession was made voluntarily, is for the trial court, and not for the jury. The question relates to the admissibility of evidence, and like all similar questions is not reviewable by the jury. Whether the deceased spoke the truth when she declared that the defendant had shot her was for the jury's determination. Whether the witnesses who testified that she made such a declaration testified truthfully was likewise for the jury to decide."

Mr. Justice Garrison, speaking for this court in *State* v. *Hernia,* 39 *Vroom* 299 (at *p.* 301), says:

"The general rule that incriminating statements made by a defendant are admissible on behalf of the state is qualified by another rule which makes it the duty of the trial court to ascertain that such statements, when they amount to admissions of guilt, were made by the defendant of his free will, and not because of threats that were held over him or of hopes that were held out to him. Inasmuch as ordinarily the officers of the law alone are in a position to make good such threats or promises, this subsidiary rule finds application chiefly in cases where the defendant is a prisoner in their custody. The fact of custody, however, standing alone, raises no presumption that illicit methods had been employed. Such an inference arises, if at all, from the circumstances of each case, among which the fact of custody is to be included and considered. To repel such an inference the state may, among other things, show that the prisoner, before making the statement sought to be proved against him, had been informed that he was not under any compulsion to speak, and that if he choose to speak, he did so without any inducement being offered to him. Such preliminary information, which is usually referred to as cautioning or warning a prisoner, is not, however, an essential step in the orderly adduction of testimony of this sort, although it sometimes seems to be so regarded. The qualifying rule, in its nature and reason, is limited to those cases in which the circumstances raise, or are capable of raising, the inference which such a warning would tend to rebut. Where no ground exists for the inference, no reason exists for the warning, and the prisoner's statement is admissible because of its evident spontaneity."

Now, as already seen, the Court of Oyer was confronted with the preliminary question concerning the voluntariness of the prisoner's confession and admitted it in evidence. If there were any evidence tending to support the judges' finding it will not be disturbed.

The prisoner was first asked the questions which he answered and which are written in his confession and then it was read to him, being translated by the interpreter, and

the prisoner made his mark to it. It commenced in this wise:

"I am lieutenant of police of the Jersey City police department. I am going to ask you some questions in reference to the crime for which you are arrested, you may answer them or not just as you choose; but what you do say must be of your own free will a voluntary statement as it will be taken down in writing and used at your trial."

If the defendant had felt himself constrained before he should have availed himself of the offer to keep silent when the confession was read over to him, should have refused to sign it, and should have repudiated his declaration. Instead of doing so he signed the confession with his mark. As cautioning a prisoner is not an essential preliminary to obtaining from him a confession (and must necessarily be present only where there are circumstances raising, or capable of raising, inferences which such a warning would in turn tend to rebut), the prisoner was treated to all the consideration which the law, in any aspect of the case, would afford him. There is no dispute but that he in fact made the confession imputed to him. He was warned that he did not have to talk but that what he said would be used on his trial; and this before he committed himself to the written confession, which was the only confession of guilt put in evidence on the trial.

Now, as to the hope held out to the defendant and which is alleged to have induced the confession: As in Roesel *v.* State the interpreter may be considered a person in authority within the meaning of the rule relating to the admissibility of confessions. 33 *Vroom* 225. As was said in that case (at *p.* 227):

"The promise or hope excited must relate to some benefit to be derived by the prisoner in the criminal prosecution. Though it is necessary to the admissibility of a confession that it should have been voluntarily made—that is, that it should have been made without the pressure of hope or fear from persons in authority—yet it is not necessary that it should have been the prisoner's own spontaneous act. It

would be received though it were induced by a promise of some collateral benefit or boon, no hope or favor being held out in respect to the criminal charge against him, or by any deception practiced on the prisoner, or false representation made to him for the purpose, provided there is no reason to suppose that the inducement held out was calculated to produce any untrue confession or lead the prisoner to suppose that it would be better for him to admit himself guilty of an offence which he had not committed."

Assuming that the help which the prisoner expected from the interpreter was not alone the procuring of bail for him, which was certainly a collateral benefit, but was some benefit, vague or specific, which the defendant hoped and expected the interpreter could and would obtain for him, nevertheless, it does not appear that the interpreter's offer of help to the defendant was held out to him in consideration of his making a statement or confession, that is, the prisoner was not told that if he would make a statement or confession he would be helped; nor did he say he would make a statement if he were helped. He simply asked the interpreter if he would help him, and the interpreter replied that he would if he could. This flattery of hope, if such it were, could not have operated to induce a confession. The confession appears to have been made entirely aside and apart from that. And there is no evidence that illicit methods were employed to obtain the confession, and none from which it could be inferred.

The finding of the trial court that a defendant's confession was voluntarily made will not be reversed if there be any legal evidence to support it. *State* v. *Monich, ubi supra.*

Our conclusion upon this head is that the confession was entirely voluntary; was so shown to be, and was, therefore, properly admitted by the trial court.

One other question remains to be considered. It resides in specification 13 of the causes assigned for reversal. It becomes available to the defendant, if at all, under the beneficent provisions of section 136 of the Criminal Procedure act *(Comp. Stat., p.* 1863), which enables him to return

with the writ of error the entire record of the proceedings had upon the trial and to get the benefit of any error either in the admission or rejection of testimony or in the charge of the court or in the denial of any matter which was matter of discretion.

The objection is that the only evidence of the defendant's guilt arose out of his confession which was in nowise corroborated, and that a jury cannot be permitted to find a verdict of guilty of murder upon the uncorroborated confession of the defendant. There was no request made of the trial court in respect to this matter, and consequently it does not reside in any bill of exceptions. It could only have arisen in the oyer by a request to the judge to give a binding instruction to the jury. This was not done. Nevertheless it is sought to be made a cause for relief and reversal as permitted by section 137 of the Criminal Procedure act when the entire record is brought up under section 136. The particular matter complained of on this score may not be within the provisions of the latter section. It does not arise because of the admission of illegal testimony, nor by the rejection of any legal testimony. The court made no charge respecting it, and it is in nowise connected with any matter of discretion which was denied. Assuming, however, that the objection is one which may be availed of by the defendant it will now be considered. In section 107 of the Crimes act (*Comp. Stat., p.* 1780) it is provided that in no case shall the plea of guilty to murder be received upon any indictment, and if upon arraignment such plea should be offered it shall be disregarded and the plea of not guilty be entered, and the jury, if they find the accused guilty, shall designate by their verdict the degree of guilt.

The provision that a prisoner charged with murder should not be permitted to plead guilty was first enacted in 1893. *Pamph. L., p.* 82. Prior to that time the plea was admitted, and if the offender were convicted on confession in open court, the court proceeded by examination of witnesses to determine the degree of guilt and give sentence accordingly. *Rev., p.* 239, § 68.

Neither the act found in the revised statutes nor the amendment passed in 1893, altered any rule of the common law with reference to the force and effect of confessions to the crime of murder. Those acts only provided for matter of practice on the trial of prisoners charged with murder.

Although the plea of guilty to murder, if made, is to be disregarded, and the accused put upon trial, still, if the defendant pleads guilty upon arraignment no duty appears to rest upon the presiding judge to inform the jury that there is no confession before them; certainly not unless such request is made by defendant's counsel. *State* v. *Valentina*, 42 *Vroom* 552, 556.

The only limitation upon the use as evidence against him of a prisoner's confession of murder, voluntarily made, is the want of proof of the *corpus delicti*. If death, through criminal agency, be proved, and a man confesses to having caused that death he may be convicted of murder on his confession. *State* v. *Guild*, 5 *Halst.* 163. See also *State* v. *Strong, ante p.* 177. However, in this case, there was corroboration of the fact that the prisoner killed the deceased, in this, there was evidence from which the fact of guilt could be inferred, at least when considered in connection with the other facts of the case, namely, he was seen in the hall outside of his apartment about eight o'clock in the morning of the day when his wife was found in bed murdered with a blunt instrument. He said that he threw the axe under the rear stoop of the house which was in front of his, and the axe was found where he said he had thrown it, having previously said he struck his wife with it.

Other matters alleged as error and assigned as causes for reversal we find without substance.

The judgment under review must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, VOORHEES, MINTURN, VREDENBURGH, CONGDON, WHITE, JJ.   10.

*For reversal*—BERGEN, KALISCH, BOGERT, JJ.   3.