## THE STATE, DEFENDANT IN ERROR, v. FRANCIS GREGORY, PLAINTIFF IN ERROR.

Submitted March 24, 1919—Decided June 20, 1919.

The defendant was indicted and convicted of a conspiracy to cheat and defraud. One of the conspirators, by a false representation, obtained, from the victim of the conspirators, $25,000 upon an agreement to divide it equally between the conspirators, but he falsely represented to them that he obtained only $20,000, which was divided, defendant getting a share. Subsequently, defend-

ant ascertaining that he had been defrauded by his co-conspirator, demanded and was paid a share of the residue of the money extorted. The first division was more than two years prior to the finding of the indictment, but the last was within the statutory limitation. *Held*, that the last division was a continuance of the conspiracy and that the original conspiracy to cheat and defraud a person and divide, the proceeds was not completed until after the contemplated division of the proceeds was finally concluded, and if there was a division within two years, that being the statutory limitation, before the indictment was found, the statute was not a bar because the crime was not concluded by the limitation until two years after the last overt act in furtherance of the corrupt agreement.

On error to the Supreme Court.

For the plaintiff in error, *Howe & Davis*.

For the state, *J. Henry Harrison* and *Andrew Van Blarcom*.

The opinion of the court was delivered by

BERGEN, J.   The grand jury of the county of Essex at the September term, 1916, of that court presented an indictment against Simon Hahn, John Gregory and Francis Gregory for conspiring to defraud Charles M. Kase of the sum of $25,000. The indictment charges, in substance, that on the 30th day of December, 1913, Hahn, representing himself as well as the two Gregorys, obtained from Charles M. Kase the sum of $25,000, on the representation that one Charles Peaker demanded that sum to compromise a threatened action by him against Kase to recover damages for adultery alleged to have been committed by him with Peaker's wife; that this representation was false to the knowledge of the two Gregorys and Hahn, and intended by them to cheat and defraud Kase; that Kase paid to Hahn the sum of $25,000, which the conspirators procured for the purpose of a division. The proof shows that of this sum $2,000 was paid to Peaker, and the balance, to the extent of $18,000, was divided between the conspirators; that only $20,000 was divided because Hahn

represented to his joint conspirators that that was the sum collected; that, subsequently, some of the other conspirators, discovering the fraud of Hahn, they, Francis Gregory being one, demanded that Hahn divide the $5,000 as a part of the result of the conspiracy, to which Hahn acceded; that on the 4th day of January, 1915, the residue of the $25,000 was divided among the conspirators, of which the defendant, Francis Gregory, received $1,250 for himself and John Gregory, and divided it equally between himself and John Gregory. The defendant being convicted has appealed to this court, and, first, argues that the statute of limitations applies because the conspiracy to obtain the money was completed on December 30th, 1913, when the first division was made, and therefore more than two years having elapsed after the money was obtained before the indictment was presented, the statute applies, notwithstanding the fact that the last division of the money thus obtained was made January 4th, 1915, which was less than two years prior to the presenting of the indictment.

Francis Gregory was tried alone, a severance having been ordered, and the evidence warrants the finding that the three defendants conspired to cheat and defraud Kase of $25,000; that, in pursuance of this arrangement, Hahn obtained from Kase $25,000, but falsely represented to the other conspirators and to Peaker that all he obtained was $20,000; that this sum of money was divided more than two years before the finding of the indictment, and that, subsequently, the defendant ascertaining that Hahn had withheld $5,000 demanded a further division, and this was made January 4th, 1915.

The question to be considered is whether the crime was completed when the first division was made or whether it continued until the final distribution in 1915. The crime charged was a conspiracy to cheat and defraud Kase of a large sum of money to be divided between the conspirators, which was not completely divided until 1915. We are of opinion that the crime was not completed until its fruits

were finally divided, and that the acceptance of the last dividend was an overt act in execution of the conspiracy. If any one of the conspirators had withdrawn after the first division, the statute might be a bar, but the proof in the case shows that this defendant did not withdraw but demanded and received the final dividend, which was an overt act in the consummation of the conspiracy.

Mr. Justice McKenna, speaking for the Supreme Court of the United States in *Brown* v. *Elliot,* 225 *U. S.* 392, approved the rule laid down by Mr. Justice Van Devanter in *Lonabaugh* v. *United States,* 179 *Fed. Rep.* 476, which was: "While the gravamen of the offence is conspiracy, the terms of section 5440 are such that there also must be an overt act to make the offence complete (*Hyde* v. *Shine,* 199 *U. S.* 62, 76) ; and so the period of limitation must be computed from the date of the overt act rather than the formation of the conspiracy. And where during the existence of the conspiracy there are successive overt acts, the period of limitation must be computed from the date of the last of them of which there is appropriate allegation and proof, and this although some of the earlier acts may have occurred more than three years before the indictment was found."

. This meets the precise point raised in this case, as the last overt act in execution of the conspiracy was the division of the balance of the fund, of which Kase was cheated, and that act being within the two years before the indictment was found, the statute of limitations does not apply. Most of the cases cited by the appellant relate to statutes which do not require an overt act to make the conspiracy a crime.

The case of *State* v. *Herbert* (*New Jersey Supreme Court*), 92 *N. J. L.* 341, is not applicable, for there the conspiracy was to prevent the due administration of the law, by false testimony in aid of a petition for divorce filed by a wife, and it was held that the conspiracy was accomplished when the false evidence was given and the cause submitted to the court for determination, and while no opinion is expressed as to the soundness of that conclusion, that not being necessary, it is

quite apparent that it cannot influence the present cause, for, in State v. Herbert, the crime was presenting to the court false evidence, and that had been accomplished when the evidence had been submitted to the court, while here the potent element was a division of the spoils, and until that happened the overt act was not concluded.

The second point made by the defendant is, that the indictment does not set out any offence committed within two years before its finding; this depends upon whether the offence continued until January, 1915. The notion of the defendant that the conspiracy must be charged to have been formed within the two years before the indictment was found, otherwise the statute applies, is not sound, because the formation of the conspiracy is not a crime until there is some overt act in execution thereof, and, as we think, the crime was not completed until the last division, then there was an overt act within the two years.

The next point is, that the court erroneously refused to allow the defendant's attorney to ask of the witness Kase: "And this money and this property came from him [his father] didn't it?" And second: "And up to the time of his death it was not yours—it was his?" The theory upon which the defendant claims that this was error is that the indictment charges the defendant with conspiring to cheat and defraud Kase and they had a right to inquire whether the money was Kase's and where it came from. It was of no consequence where Kase got the money; it was his money which he was using to settle the threatened action, and it was immaterial from whence he obtained it.

The next point is, that the court permitted to be read and offered in evidence the testimony given by the defendant on a previous trial of the same indictment, and that the allowance of that proof as to the statement made by the defendant was compelling him to testify against himself.

There is nothing in this because statements made by a defendant are his own admissions made as a witness in his own behalf, and, if they were inconsistent with what he then tes-

tified to, it was perfectly competent to show that he had at another time made statements inconsistent therewith.

It is next urged that the court erroneously refused to charge: "If you find from the evidence that the money was extorted from Kase by threats of Hahn, but that such threats were made by Hahn acting* alone and not because of any corrupt agreements between the defendant and Hahn as set out in the indictment, there should be a verdict for the defendant." This was properly refused because it eliminated every act by the defendant in furtherance of a previous corrupt agreement of which he had knowledge, although he might not have originally agreed to the combination. One who participates in the corrupt agreement with knowledge that it is corrupt, and that what he is doing is in furtherance of that agreement, would be as guilty as if he had originally conspired, and the request which was refused does not properly state the law. *Stewart* v. *Johnson,* 18 *N. J. L.* 87.

The next point is, that the court refused to charge: "If you find from the evidence that up to the time that the money was gotten from Kase by Hahn there was no corrupt agreement between Hahn and the defendant whereby they had conspired to cheat and defraud Kase of the money, there should be a verdict of not guilty rendered in favor of the defendant, even though they were given by Hahn the sums of money stated in the indictment after he had received the money from Kase." This was properly refused, because if the defendant entered into the arrangement to divide the proceeds of the conspiracy with knowledge of the intent to cheat Kase, he became a party to it.

The next point is, that the court refused to charge as requested that: "If you find from the evidence that Hahn secured this money by the threats set out in the indictment, but that in so doing there was no proof of a corrupt agreement with the defendant, and that he knew nothing of the steps that Hahn, as attorney for Peaker, intended to take in securing the money from Kase, nor the amount that he intended to ask until after the amount had been agreed upon

between him and Kase, the defendant would be entitled to an acquittal, even though you believe that the sum of money received from Hahn was greatly in excess of what his services were worth as a detective in the case." This was properly refused, because even if the defendant did not know the amount to be extorted, he did, subsequently, know the amount that had been extorted, and participated in the first distribution, and afterwards demanded his share of the whole. In other words, he adopted the conspiracy to cheat and defraud Kase, by participating in the overt act of dividing the proceeds of the conspiracy.

The next point is, that the court refused to charge that, before the jury could convict, all the allegations of the indictment sufficient to constitute a corrupt agreement to cheat must be proved beyond a reasonable doubt, and if the proof failed in any essential particular the verdict should be not guilty. The court had charged the jury that the defendant was entitled to the benefit of any reasonable doubt arising on the evidence, and that the burden was on the state to satisfy them, beyond such doubt, of the defendant's guilt, and then properly defined what was a reasonable doubt.

What was requested was that the state must prove beyond a reasonable doubt the necessary allegations sufficient to constitute a corrupt agreement to cheat. That is not correct; the state was bound to prove not only the corrupt agreement, but the overt act, and while the defendant might not have participated in the original corrupt agreement, still the jury could convict him if the state proved beyond a reasonable doubt his subsequent participation with knowledge of the corrupt agreement.

The next point is, refusal to charge if the defendant was guilty of a conspiracy there should be a verdict of not guilty, if the common object of the conspiracy was consummated more than two years before the indictment was found. This request was based upon the evidence which was that the defendant participated in a division of the fraud within two years. What the request amounts to is, that the court having

instructed the jury, as a matter of law, that the taking of the dividend in 1915 was a continuation of the crime, nevertheless, the jury could disregard that rule of law and find otherwise. It was no error to refuse this.

The same question is raised in another form by another request to charge, which was refused, that if the jury should find that the conspiracy was cheating Kase, and that object was consummated in December, 1913, there should be a verdict of not guilty. There was no error in this refusal.

The next point argued is, that the court should have charged as requested, that if the jury found from the evidence that the money of Hahn, one of the conspirators, was paid by him as hush money to buy the silence of the defendant and Peaker, and was not done in execution of a conspiracy to cheat, then the verdict should be not guilty.

This the court properly refused because the evidence was that the money paid by Hahn was a part of the proceeds of the conspiracy, and so understood and demanded by the defendant, and if paid by Hahn either to the defendant or Peaker, it was done in completion of the conspiracy.

We have examined the two other matters referred to in the brief and find no legal error therein.

The judgment will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ.  11.

*For reversal*—None.