[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 429 
Defendant appeals from a judgment of conviction, entered on verdict of a jury in the Bergen County Court, on an indictment charging defendant, Klausner, with conspiracy with P. James Pellecchia, John Lennon, alias Jack Lennon, John Doe and Richard Roe, to violate the gambling statutes and, particularly, R.S.
2:135.
The first point urged for reversal is that "there was neither proof of intent to conspire nor proof of corrupt agreement" as against Klausner.
In State v. Gregory, 93 N.J.L. 205, 107 A. 459 (E. A.
1919), it was held:
"One who participates in the corrupt agreement with knowledge that it is corrupt, and that what he is doing is in furtherance of that agreement, would be as guilty as if he had originally conspired * * *."
And in State v. Garrison, 130 N.J.L. 350, 33 A.2d 113
(Sup. Ct. 1943), it was held that "A conspiracy may be proved by overt acts done in pursuance thereof."
It appears from Klausner's own voluntary statement that he illegally installed telephone extensions for Lennon, at various addresses at the latter's direction; that he knew that Lennon employed "sitters" to take horse racing bets over these telephones, and actually saw such bets being recorded *Page 430 
on "scratch sheets" by the "sitters" at these telephones; that he had picked up Lennon's mail from P.O. Box 120, over a period of time, since he first got to know Lennon, which was approximately three years prior to August 30, 1948; that he delivered the mail from the post office box, some of which was addressed to the box number only and some to Lennon, to Lennon's places of business, at various times; and that he had instructions from Lennon never to leave the mail exposed, but to put it in the safe, if Lennon was not there, for which purpose he was given the safe combination.
Thus Klausner's own admission clearly establish that he had knowledge of a corrupt agreement between Lennon and a person or persons, unknown to Klausner, whereby Lennon, as a bookmaker, was taking horse racing bets telephoned in by the other party or parties to the agreement. It is, also, clear that Klausner's acts, in illegally installing telephone extensions, were knowingly in furtherance of said corrupt agreement, and were overt acts evidential of a conspiracy and an intent to conspire to violate the law.
The inference to be drawn from Klausner's picking up the mail from P.O. Box 120 and delivering same to Lennon over a three year period is perhaps not so obvious. Klausner said he never saw "the inside of the mail" (A-111a-10) and that he didn't know what Lennon did with it (A-111a-17). Nevertheless, even on this point, the inference is almost inescapable that although Klausner wasn't aware of the specific content of the mail, nor of Lennon's disposition of same, he nevertheless realized that it was in some manner connected with Lennon's bookmaking activities and, hence, he, Klausner, was acting in furtherance of their common corrupt purpose.
The overt acts of the defendant Klausner when considered in the light of his knowledge of Lennon's bookmaking activities furnish evidence of intent to conspire and corrupt agreement which is sufficient to support the charge of conspiracy.
"No written formal or definite agreement is necessary to constitute a conspiracy, its existence being generally a matter of inference from the acts of the parties * * *. Previous acquaintance between the conspirators is unnecessary, nor is it necessary that each conspirator *Page 431 
should have seen the others, or have knowledge as to who all the members of the conspiracy are. It is not essential that the parties meet or that they confer and formulate their plans, nor that each conspirator have knowledge of the scope of the conspiracy or the means by which the purpose is to be accomplished * * *." 15 C.J.S. 1062, Conspiracy sec. 40.
It is true that the installation of telephone extensions is an overt act which was not alleged in the indictment. However, the State may prove overt acts other than those alleged in the indictment. State v. Ellenstein, 121 N.J.L. 304, 317 (Sup.Ct. 1938).
Defendant argues that there was no independent proof of thecorpus delicti and hence his statement or confession was inadmissible. Professor Wigmore's definition of the term "corpusdelicti" is helpful:
"The meaning of the term `corpus delicti' has been the subject of much loose judicial comment, and an apparent sanction has often been given to an unjustifiably broad meaning. It is clear that an analysis of every crime, with reference to this element of it, reveals three component parts, first, the occurrence of the specific kind of injury or loss, (as, in homicide, a person deceased; in arson, a house burned; in larceny, property missing); secondly, somebody's criminality (in contrast, e.g., to accident) as the source of the loss, — these two together involving the commission of a crime by somebody; and thirdly, the accused's identity as to the doer of this crime.
"(1) Now the term `corpus delicti' seems in its orthodox sense to signify merely the first of these elements, namely the fact of the specific loss or injury sustained: * * *
"(2) But by most judges the term is made to include the second element also, i.e., somebody's criminality * * *
"(3) A third view, indeed too absurd to be argued with, has occasionally been advanced, at least by counsel, namely, that the`corpus delicti' includes the third element also, i.e., the accused's identity or agency as the criminal. By this view, the term `corpus delicti' would be synonymous with the whole of the charge, and the rule would require that the whole be evidenced in all three elements independently of the confession, which would be absurd." VII Wigmore on Evidence, (3rd Ed.) 401, sec.
2072.
Pellecchia's testimony clearly established that there existed a criminal conspiracy to violate R.S. 2:135-3. The fact of some one's criminality is, therefore, likewise established. Klausner's statement or confession, if it be deemed such, *Page 432 
establishes his participation in that criminal conspiracy. To ask for more corroboration would be, as indicated by Professor Wigmore, to ask for independent proof of the whole of the charge. That the rule in this State is not so broad is indicated by the case of State v. Geltzeiler, 101 N.J.L. 415 (E. A. 1925), cited by defendant:
"* * * when there is a voluntary confession of the offense by the defendant in a criminal case, full proof of the body of the crime is not required in addition to the confession, but sufficient proof thereof may arise out of evidence corroborating some fact or facts in the confession itself * * *."
Pellecchia's testimony as to the manner in which the conspiracy was carried out, both in relation to the telephoning of bets and in the mailing of balances due to P.O. Box 120, furnishes independent corroboration of Klausner's overt acts as described in his own statement.
Defendant urges that since his confession was obtained prior to his commitment by a magistrate or judge, the confession is not admissible. Defendant relies on Rule of Criminal Practice 2:3-3, which provides that an arrested person should be taken before a court or magistrate, without unnecessary delay. The similarity of this rule to Rule 5 (a) of the Federal Rules of Criminal Procedure is pointed out, and the case of Upshaw v. U.S.,69 S.Ct. 170 (1948), which invalidates a confession obtained in the violation of this federal rule is cited. It should be pointed out that the holding in this case as well as in McNabb v. U.S.,318 U.S. 332 (1943), which was of similar import, only settled a matter of federal practice and was not decided on constitutional grounds.
It is clear that the New Jersey rule has always been that a confession is admissible if given voluntarily. The cases are collected in State v. Cole, 136 N.J.L. 606, 56 A.2d 898
(E. A.), in an opinion by Chancellor Oliphant:
"A confession by an accused to one in authority to be admitted in evidence must be voluntary. By this is meant that the confession must not be extorted by any threats or violence, nor obtained by *Page 433 
any direct or implied promise relating to some benefit to be derived by the accused in the criminal prosecution. Roesel v.State, 62 N.J.L. 216, 225; State v. Young, 67 N.J.L. 223,227; State v. Kwiatkowski, 83 N.J.L. 650, 660; State v.Dolan, 86 N.J.L. 192; State v. Murphy, 87 N.J.L. 515, 525;State v. Genesee, 102 N.J.L. 134, 139."
And from the same opinion:
"* * * the complaint is made that it was error to overrule questions seeking to elicit information as to whether the defendants had been advised as to their rights and privileges and the right to counsel.
"A prisoner is only entitled to counsel to aid him in his defense, he is not entitled to the aid of counsel to save him from his own voluntary acts. State v. Murphy, supra. Such cautionary instructions are not an essential step in the establishment of the fact that a confession is voluntary. Statev. Hernia, 68 N.J.L. 299, 301."
The Rule of Criminal Procedure 2:3-3 is prospective only. The confession was obtained on August 30, 1948. The Rule of Criminal Practice in question took effect on September 15, 1948. At the time the confession was obtained, neither threats nor promises were made to Klausner (A-57a-31). The State has sustained its burden of proving that the confession was voluntary (A-57a). Since, therefore, the confession was a legally admissible one when made, it continued to be legally admissible at defendant's trial. It will be noted that Rule 2:3-3 only surrounds an arrested person with certain safeguards; it does not provide that all confessions obtained, when these safeguards are omitted, are inadmissible.
It may likewise well be doubted, even if Rule 2:3-3 had been in effect at the time, that the confession was obtained in violation of its safeguards. It appears from the confession itself that it took place at 11:34 A.M., August 30, 1948. Defendant was arrested that same morning while picking up the mail at P.O. Box 120. By contrast, in McNabb v. U.S., supra,
there was unremitting questioning of the defendants for a period of two days before they were brought before a United States Commissioner as the law required, and in Upshaw v. U.S., supra,
the confession was made during a *Page 434 
thirty hour detention for interrogation by the police, without the defendant being taken before a magistrate for commitment.
Appellant challenges the trial court's charge to the jury and argues that injury was suffered by defendant, Klausner, particularly by the court's statement with respect to the overt acts alleged to have been committed and the presumption of innocence. No objection was made on the last point by Klausner, at the trial.
A careful reading of the court's charge does not disclose any injury to appellant on either ground.
The judgment of conviction is affirmed.